FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

DEC 2 8 2018

IN THE UNITED STATES DISTRICT COURT

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

FOR THE EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| HOG WILD TRUCKING, Inc., on behalf of itself and all similarly situated persons and entities,<br><br>                Plaintiffs,<br><br>    v.<br><br>KUMHO TIRE U.S.A., Inc., a California corporation; HYUNDAI TRANSLEAD, INC., a California corporation; and HYUNDAI de MEXICO, S.A., a foreign corporation<br><br>                Defendants. | CASE NO. 3:17CV00254 BSM<br><br>This case assigned to District Judge Miller<br>and to Magistrate Judge Kearney<br><br>**CLASS ACTION COMPLAINT FOR BREACH OF EXPRESS WARRANTIES, VIOLATIONS OF MAGNUSON-MOSS ACT (15 U.S.C. §§ 2301-2312), NEGLIGENCE, UNJUST ENRICHMENT, VIOLATIONS OF THE ARKANSAS AND LOUISIANA PRODUCTS LIABILITY ACTS, VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT, REDHIBITION, AND CIVIL CONSPIRACY**<br><br>**JURY TRIAL DEMANDED PURSUANT TO FED. R. CIV. PRO. 38(a) & (b)** |

Plaintiff Hog Wild Trucking, Inc., on behalf of itself and all other similarly situated persons and entities, by and through its designated attorneys, and for its Class Action Complaint alleges as follows: All allegations in this Complaint are based upon the investigation of counsel, except the specific allegations pertaining to the named Plaintiff, which are based on personal knowledge. As of the date of this Complaint, no discovery has been conducted. As a result, it is likely that once the discovery process is underway, the named Plaintiff will seek leave to amend his Complaint to add new factual allegations and/or new claims.

1

## I.     NATURE OF THE ACTION

1.     This nationwide class action and a statewide class action for select states brought

for:  (i) Breach of Express Warranties, (ii) Violations of Magnuson-Moss Act, 15 U.S.C. §§ 2301-

2312, (iii) Negligence, (iv) Unjust Enrichment, (v) Violations of the Arkansas and Louisiana

Products Liability Acts, (vi) Violations of the Arkansas Deceptive Trade Practices Act, (vii)

Redhibition, and (viii) Civil Conspiracy in order to remedy Defendants' wrongful actions in

connection with their manufacture, distribution, sale and/or lease of an inherently defective and

extremely dangerous "low rolling resistance" trucking tire.  The named Plaintiff and the Class

Members seek an award of compensatory damages against Defendants, as well as an award of

exemplary damages against Defendants for their intentional and willful concealment of the

inherently defective and dangerous condition posed by these tires from the public and the

necessity to replace same to protect the health and welfare of state citizens.

## II.     SUBJECT MATTER JURISDICTION AND VENUE

2.     This Court has original subject matter jurisdiction over this Class Action pursuant

to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).  The named Plaintiff is a

citizen of the State of Arkansas. Pursuant to 28 U.S.C. §§ 1332(c) and (d)(10), Defendants

Kumho Tire U.S.A., Inc,  Hyundai Translead, Inc. and Hyundai de Mexico, S.A. are

corporations organized under the laws of the States and/or foreign country other than Arkansas,

with their principal places of business outside the State of Arkansas.  As a result, the named

Plaintiff, the putative Class Members, and the Defendants are citizens of different States under

28 U.S.C. § 1332(d)(2)(A).

3.     Each of the proposed Classes alleged below well exceeds 100 persons and/or

entities.  Pursuant to 28 U.S.C. § 1332(d)(6), the aggregate amount of the Class Members' claims

substantially exceeds $5,000,000, and thus, exceeds the requisite amount in controversy set forth

in 28 U.S.C. § 1332(d)(2).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a), (b) and (c) on the grounds that all or a substantial portion of the acts giving rise to the violations alleged herein occurred in this judicial district.

### III.    THE PARTIES AND PERSONAL JURISDICTION

5.      Plaintiff Hog Wild Trucking, Inc. (hereinafter referred to as "Plaintiff") is an Arkansas corporation with its sole place of business located in Jonesboro, Arkansas. Plaintiff is a member and proposed representative of a Class of persons and entities who were subjected to the unlawful activity of the Defendants as more fully described herein.

6.      Defendant KUMHO Tire U.S.A., Inc. (hereinafter referred to as "KUMHO") is a corporation organized under the laws of the State of California, with its principal place of business located at 133 Peachtree Street, NE Suite 2800, Atlanta, Georgia.  As such, Defendant KUMHO is a citizen of both California and Georgia.  Service of process may be accomplished on KUMHO through its registered agent for service of process, H. Thomas Hong, located at 1230 Peachtree Street, NE, Suite 1300, Atlanta, Georgia 30303. Defendant KUMHO is a wholly owned subsidiary of KUMHO Tire Company, Inc., a South Korean tire company based in Gwangju, South Korea.

7.      Defendant Hyundai Translead, Inc. (hereinafter referred to as "Hyundai Translead") is a corporation organized under the laws of the State of California, with its principal place of business located 8880 Rio San Diego Drive, Suite 600, San Diego, California 92108. As such, Defendant Hyundai Translead is a citizen of California.  Service of process may be accomplished on Hyundai Translead through its registered agent for service of process, Monique Guerro, located at 8880 Rio San Diego Drive, Suite 600, San Diego, California 92108.

8.      Defendant Hyundai de Mexico, S.A. de C.V. (hereinafter referred to as "Hyundai Mexico") is a corporation organized under the laws of Mexico, with its principal place of business located La Encantada No. 7474, Parque Industrial, El Florido, Tijuana, BC Mexico.  As such, Defendant Hyundai Mexico is a citizen of Mexico.  Service of process may be

3

accomplished on Hyundai Mexico through its registered agent for service of process, Sebong Hong, located at 800 W. 6th Street, Suite 1010, Los Angeles, California 90017.

9.      This Court has both general and personal jurisdiction over all Defendants based on the fact that Defendants have had substantial and continuous contacts with Arkansas, as well as specific jurisdiction over all Defendants arising from their actions in the manufacture, sale, leasing and distribution of the defective tires and trailers outfitted with the defective tires to Class Members.  As a result, this Court has personal jurisdiction over all Defendants pursuant to ARKANSAS CODE ANN. § 16-4-101(B).

## IV.      FACTUAL ALLEGATIONS

### A.      Summary of Class Allegations

10.      From 2013 through 2016, Defendant KUMHO manufactured and distributed a tire specifically designed for the installation and use on commercial long haul trailers known as the "KLT02e." Defendant KUMHO advertised and represented the KLT02e as a "low rolling resistance" tire which, when used on line haul trailers and their semi trucks, would incur substantially less wear than other long haul tires and, thus, last longer and save money on tires as well as on fuel costs.

11.      In particular, Defendant KUMHO uniformly claimed that the KLT02e's alleged "special low rolling resistance tread cap & base compounds" presented "longer casing life due to high strength, flex/fatigue-resistant ply wire" and would "reduced uneven shoulder wear as the result of round shoulder design with decoupling grooves" and that KUMHO had indeed "verified [the KLT02e] tires … to improve wear and fuel economy." It further represented that, despite the design of these tires being low rolling resistant, the KLT02e could be used as steering tires. Defendant KUMHO issued a six (6) year express warranty that the KLT02e would be free of defect.  Defendant KUMHO marketed the KLT02e to everyday consumers as well as commercial truckers, distributing the tires through Wal-Mart and other big box consumer retailers.

4

12.     Defendants Hyundai Translead and Hyundai Mexico (hereinafter collectively referred to as "Hyundai") manufacture a variety of van trailers designed to be pulled by a semi truck. Defendant KUMHO furnished the KLT02e to Hyundai, which Hyundai installed and used in connection with its manufacture of Hyundai's "Dry Van Trailer" series of trailers from 2012 through 2016. Upon information and belief, Defendant Hyundai installed the KLT02e on approximately 40,000 dry vans that it manufactured, with eight (8) tires per dry van. Defendant Hyundai Translead issued a five (5) year express warranty that their dry van trailers containing the KLT02e tire would be free from defect.

13.     Despite their express warranties and representations, Defendants KUMHO and Hyundai discovered that the KLT02e was indeed defective and dangerous. Specifically, as the result of numerous complaints by truckers, these Defendants discovered that the KLT02e had been manufactured from a defective rubber compound which was too soft and not in compliance with federal regulations. As a result of this defect, the KLT02e was subject to rapid wear and erosion that rendered the KLT02e dangerous for road use and required the replacement of the KLT02e well before the end of its otherwise useful life. Typically, low rolling resistance tires will last for approximately 140,000 miles; however, the KLT02e was only lasting truckers approximately 30,000 miles before becoming a dangerous road hazard and requiring replacement.

14.     Following this discovery, Defendants KUMHO and Hyundai nevertheless determined to ignore the dangerous and defective conditions posed by the KLT02e and even took steps to deny their express warranties and the existence of any problem with the KLT02e, though privately they knew that the KLT02e was defective and dangerous. Instead of warning the public and consumers and offering to replace the tires, Defendant KUMHO simply ceased the manufacture of the KLT02e, buried its head in the sand, refused to honor its warranty, and offered to sell different tires to complaining consumer.

15.     Consumer complaints over the KLT02e were also well known to Defendant Hyundai. In fact, when a large Mid-South trailer dealer threatened to sue Hyundai Translead in a

5

class action over the KLT02e, Defendant Hyundai flew a head official from South Korea to offer this dealer significant purchase discounts on future Hyundai trailer orders if it would agree to not file a class action suit and would remain secrete about their deal. Thus, both Defendants Hyundai and KUMHO took affirmative steps to conceal the defective nature of the KLT02e while avoiding their legal obligations to their consumers.

16.     Because of their inherent and dangerous defects, the KLT02e are substantially likely to fail before the end of their useful life.  Further, these tires are subject to failure in a sudden and dangerous manner in that the tread will shear and break without warning while a person is driving a vehicle equipped with the KLT02e.  The KLT02e tires are, therefore, valueless and have harmed and will continue to harm consumers economically.

**B.     "Hysteresis" and How Tire Rolling Resistance Works**

17.     Tire manufactures have discovered that a tire's "rolling resistance" has a large impact on miles per gallon. Rolling resistance is the force required to keep a vehicle's tires rolling at a given speed. Tire manufacturers quantify what is known as "Rolling Resistance Force" ("RFF") by measuring the force in pounds or kilograms required to rotate a tire at 50mph against a large steel cylindrical drum. They then calculate what is known as "Rolling Resistance Coefficient" ("RCC") by dividing the RRF by the actual load placed on that particular size of tire.

18.     Tires change shape as they rotate, and the portion of the tire in contact with the road is deformed before it returns to its relaxed state. The energy required to deform a tire is greater than what is needed to return it to its original shape. Rolling resistance, then, is a measure of how much of the energy that actually makes it to the tires is then lost both to the friction of the road surface and to the process known as "hysteresis."  As much as thirty percent (30%) of the energy that ends up making it to a truck's tires is lost due to hysteresis.

19.     Thus, hysteresis is the process by which the tire flexes as weight is placed on it, and then snaps back into shape as it rolls. The energy that comes back to the tire when it snaps

back is, due to the laws of physics, always less than the energy that went into deforming the tire in the first place, so that the tire is losing some energy to the process of flexing at every moment it is moving. As much as 30% of the energy that ends up making it to the tires is given up by friction or hysteresis.

20.     A tire with a harder rubber compound will have less deflection, meaning lower rolling resistance and better fuel efficiency; however, the ride will be stiffer and the traction will be less. A tire that has a softer rubber compound will provide a softer ride with more traction but will be deflected more, increasing the rolling resistance reducing fuel efficiency.

21.     As a result, in an effort to increase trucking miles per gallon, tire manufacturers have developed what is known as a "low rolling resistance" tire – one that purports to provide lower friction while at the same time providing greater wear and traction. The difficulty in successfully designing and manufacturing a low rolling resistance tire is that is valuable to consumers is that when low rolling resistance is increased, it often leads to a reduction of traction, tread life and tread pattern.

## C.     The KLT02e Is Defective, Leading to Premature Tire Balding and Becoming a Safety Hazard, Due to the Use of an Improper Soft Rubber Compound.

22.     In the wake of mounting pressures imposed by the EPA to increase the fuel efficiency of commercial carriers, tire manufacturers rushed to design, manufacture and market "low rolling resistance" tires. Defendant KUMHO was no exception,

23.     During the time period of 2012 through 2016, Defendant KUMHO maintained three manufacturing plants in South Korea, one or more of which made the KLT02e tire.

24.     In order to make a low rolling resistance tire that was more marketable and appealable to a wider consumer audience, KUMHO determined to create a tire that was not only a low rolling resistance tire that could be placed on a dry van and pulled (serving as a steerless tire that is being pulled) but also a tire could also serve as a "steering" tire – that is, a front wheel tire that turns a semi truck while being pushed.  Such a concept – known as "dual tires" – would

greatly expand the market for this kind of tire because truckers could rotate all tires on their semi trucks in combination with all tires on their vans and trailers.

25.     As a result, Defendant KUMHO developed the KLT02e. It claimed that the KLT02e contained "special low rolling resistance tread cap & base compounds" which presented "longer casing life due to high strength, flex/fatigue-resistant ply wire" and would "reduce uneven shoulder wear as the result of round shoulder design with decoupling grooves."

26.     Unfortunately, these representations were untrue. In order to make the KLT02e a dual tire that could be pulled as well as steered, Defendant KUMHO utilized a rubber compound that was too soft for the inner and outer edges of the tires. Although the rubber compound provided the necessary traction that these tires needed to steer and grip the road, it was simply too soft to serve as a reliable long haul tire, thus leading to premature wear and tire balding. Further, in order to lighten the weight of the KLT02e and thus reduce its rolling resistance, KUMHO also shorted the width of its radial belt, thus weakening the tire and leading to premature wear and tire separation. While generally a trucking tire will last 140,000 miles before needing to be replaced, the KLT02e would wear out at 20,000 to 30,000 miles, at which time truckers would be required to replace the tires. Defendant KUMHO further provided a six (6) year warranty on the KLT02e, claiming that these tires would be free from defect.

27.     Despite these problems, Defendant KUMHO determined to not alert the consuming public of the dangers presented by the KLT02e and further refused to honor its warranties.

**D.     Hyundai Installs the Defective KLT02e as the Original Equipment on Over 40,000 Dry Van Trailers for Sale or Lease in the U.S.**

28.     Hyundai, in partnership with Hyundai Mexico, manufactures what are known as Hyundai's "Dry Van Series" in its plant in Tijuana, Mexico. These trailers each contain eight (8) back tires and are fifty three (53) feet in exterior length. The Dry Van Series is sold or leased in five versions: the "Hyundai Original®," the "Hyundai Hy-Cube®," the "Hyundai Hy-Cube

8









33.     At this time, Plaintiff notified Fleet Equipment of the defect in the KLT02e, who in turn notified both KUMHO and Hyundai of Plaintiff's specific claim.

34.     However, even before hearing from Plaintiff as to its complaints about the KLT02e, Fleet Equipment had voiced to Defendants KUMHO and Hyundai its concern that the KLT02e was seriously defective based on numerous other trucking firm complaints. Indeed, Fleet Equipment had made contact with two other peer Hyundai Trailer dealers – Southeastern Trailer Mart located in Atlanta, Georgia and Bowman Leasing located Baltimore, Maryland – and learned that they too were experiencing a high number of customer complaints that the KLT02e was failing prematurely and was a road hazard.

35.     As a result, in the Summer of 2015, Fleet Equipment, Southeastern Trailer and Bowman Leasing made a joint complaint to Defendants KUMHO and Hyundai that the KLT02e was defective and needed to be replaced to their customers at no cost.

36.     In response, Defendant KUMHO sent investigators to Fleet Equipment, Bowman Leasing and Southeastern Trailer to examine the KLT02e tires that they each had on site. Specifically, Jim Mayfield, the Executive Vice President of Defendant KUMHO hired Doug Lee, a retired field engineer of Michelin Americas Research & Development Corporation (a tire research company) to inspect the KLT02e tires on-site at Fleet Equipment, Southeastern Trailer and Bowman Leasing.  When conducting his examination at Fleet Equipment, Mr. Lee informed Fleet Equipment's co-owner, Woody Welch, that KUHMO's compound was defective because the rubber composition was too soft per federal specification and that was the true problem.

37.     Further, Defendant KUMHO sent representative to Bowman Leasing to inspect its KLT02e tires on site. At that time, KUMHO's Director of Commercial Business informed Wesley Watkins of Bowman Leasing that KUMHO's compound was defective because the rubber composition was too soft. (Shortly after he made this admission, Mr. Grant resigned or was let go from KUMHO in April 2016).

14

38.     On April 7, 2016, Defendant KUMHO sent a warranty investigator to Plaintiff's business in Jonesboro, Arkansas in order to inspect Plaintiff's KLT02e tires and determine its warranty claim. Bud Barnes, Plaintiff's Director of Operations, Richard Long, Plaintiff's Chief Financial Officer, and Charlton Crocker, Fleet Equipment's Vice President of Leasing, were all present to observe KUMHO's inspection on April 7, 2016.  After inspecting Plaintiff's KLT02e tires, Defendant KUMHO's investigator told Mr. Barnes and the others that KUMHO had used a rubber compound that was too soft for the inner and outer edges of the tires.

39.     Despite KUMHO's admissions, Defendant KUMHO refused to honor its warranty to Plaintiff and to any of KUMHO's consumers. Instead, KUMHO simply steered Plaintiff and its other consumers to other more expensive tires that it claimed were better quality.

**F.     Hyundai Learns of the Defects in the KLT02e, is Threatened with a Class Action by Its Dealers and Secretly Settles Without Compensating the End User of the Hyundai Trailers.**

40.     After getting the brush off from KUMHO, Fleet Services, Bowman Leasing, and other dealers contacted Defendant Hyundai and informed them of the massive problem that both Hyundai Trailer dealers and end consumers were facing as a result of the defective KLT02e.

41.     In particular, Fleet Services threatened that if it did not receive some compensation for the tires that it had to replace, it would sue Defendants Hyundai and KUMHO in a class action complaint on behalf dealers who had suffered a loss due to the KLT02e.

42.     In June 2016, Defendant Hyundai sent its own President, Kenneth Lee, from South Korea, to meet Fleet Equipment and discuss the threatened class action.  Mr. Lee, on behalf of KUMHO, agreed to give Fleet Equipment $327,000 in credit towards new trailer purchases that Fleet Equipment would make in the future if Fleet Equipment did not file a class action.  Fleet Equipment did so, but passed none of that compensation on to Plaintiff or any other end consumers who had suffered damage as the result of purchasing the KLT02e or leasing dry vans originally equipped with new KLT02e tires.

43.     Upon information and belief, Defendant Hyundai reached similar settlements with other dealers who had complained about the KLT02e but the compensation paid Hyundai never went to compensate the other end consumers who had suffered damage as the result of purchasing the KLT02e or leasing dry vans originally equipped with new KLT02e tires.

## V.     CLASS ACTION ALLEGATIONS

44.     The named Plaintiff brings this action as a Class Action pursuant to Rule 23(a) of the Federal Rules of Civil Procedure, and pursuant Rule 23(b)(3).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority provisions.

45.     As to Defendant KUMHO, the Class is defined follows:

> *Nationwide Consumer Class*:  Plaintiff and all similarly situated persons and legal entities who purchased a new KLT02e tire and/or was the purchaser or lessee of any trailer or other vehicle furnished with new the KLT02e tires as the original equipment manufacturer.

> *Statewide Class for Consumers residing in Arkansas and Louisiana*: Plaintiff and all similarly situated persons and entities residing in Arkansas and Louisiana who purchased a new KLT02e tire and/or was the purchaser or lessee of any trailer or other vehicle which was furnished with new KLT02e tires as the original equipment manufacturer

> Excluded from both the Classes defined above are the named Defendants, their agents, affiliates, and employees, the Judge assigned to this matter and any member of the Judge's staff and immediate family.

> Claims for personal injury are specifically excluded from the Class definition.

46.     As to Defendant Hyundai, the Class is defined follows:

> *Nationwide Consumer Class*: Plaintiff and all similarly situated persons and legal entities who purchased or leased a new Hyundai trailer which was furnished with a new KLT02e tires as the original equipment manufacturer.

> *Statewide Class for Consumers residing in Arkansas and Louisiana*: Plaintiff and all similarly situated persons and legal entities who purchased or leased a new Hyundai Trailer which was

GL®, "Hyundai Composite®," and the "Hyundai Composite XT®" (hereinafter collectively referred to as the "Hyundai Trailers").

29.     From approximately 2013 through 2016, Hyundai and Hyundai Mexico installed the KLT02e on the Hyundai Trailers. Upon information and belief, they installed the KLT02e on approximately 40,000 Hyundai Trailers for a total of 320,000 KLT02e tires.

30.     Defendant Hyundai provided a five (5) year warranty on the Hyundai Trailer, representing that they would be free from defect.

**E.     Plaintiff Makes a Warranty Claim, KUMHO Investigates and Admits that the KLT02e is Defective But Refuses to Honor its Warranty.**

31.     In the summer of 2015, Plaintiff leased a number of brand new Hyundai Trailers from Fleet Equipment, LLC, a Mid-South authorized dealer of Hyundai Trailers and equipment. All of these Hyundai Trailers had eight (8) brand new KLT02e tires. In its lease with Plaintiff, Fleet Services assigned all warranties associated with the leased Hyundai Trailers, including the KLT02e, to Plaintiff.

32.     In 2015, Plaintiff noticed that the KLT02e was wearing out way too soon. Specifically, after only three (3) months, the KLT02e was showing significant "cup out" balding on the inside and outside of the tire tread. After approximately 30,000 miles, Plaintiff's KLT02e tires were virtually bald and showing tread separation as well as casing separation:

furnished with a new KLT02e tires as the original equipment manufacturer

Excluded from both the Classes defined above are the named Defendants, their agents, affiliates, and employees, the Judge assigned to this matter and any member of the Judge's staff and immediate family.

Claims for personal injury are specifically excluded from the Class definition.

47. **Numerosity.** The requirements of Rule 23(a)(1) are satisfied in that there are too many Class Members for joinder of all of them to be practicable. On information and belief, these Class Members exceed over 20,000 in number. This Class, as defined above, meets the numerosity requirement.

48. **Commonality.** The claims of the Class Members raise numerous common issues of fact and/or law, thereby satisfying the requirements of Rule 23(a)(2). These common legal and factual questions may be determined without the necessity of resolving individualized factual disputes concerning any Class Member, include, but are not limited to, the following questions:

49. **Common Questions of Fact and/or Law.**

    (i)    Whether the KLT02e was defective.

    (ii)    Whether the KLT02e was made with rubber compounds that caused it to wear prematurely and wear out well before the end of its intended useful life.

    (iii)    Whether Defendants knew or should have known of the inherent design and/or manufacturing defect of the KLT02e.

    (iv)    Whether the KLT02e was inherently defective and dangerous and prone to fail prematurely.

    (v)    Whether Defendants failed to adequately warn Plaintiffs and the Class of the inherent defects and dangers posed by the KLT02e.

17

      (vi)    Whether Defendant KUMHO's conduct in manufacturing, marketing and selling the KLT02e constitutes a breach of it express warranty.

      (vii)   Whether Defendant Hyundai's conduct in manufacturing, marketing and selling its Hyundai Trailers equipped with the KLT02e constitutes a breach of it express warranty

      (viii)  Whether Defendants have engaged in unfair or deceptive acts or practices when they concealed the inherent defective conditions and dangers of the KLT02e tires and failed to warn Plaintiff and the Class.

50.    **Typicality.** The claims of the named Plaintiff are typical of the unnamed Class Members because they have a common factual source and rest upon the same legal and remedial theories, thereby satisfying the requirements of Rule 23(a)(3). For example, the named Plaintiff's claims are typical of the claims of the Class because Plaintiff and all Class Members were injured or damaged by the same wrongful practices in which Defendants engaged, namely the manufacture and sale of the inherently defective and dangerous KLT02e tires, and the intentional or reckless concealment of those defects.

51.    **Adequacy of Representation.** The requirements of Rule 23(a)(4) are satisfied in that the named Plaintiff has a sufficient stake in the litigation to prosecute his claims vigorously on behalf of the Class Members, and the named Plaintiff's interests are aligned with those of the proposed Class. There are no defenses of a unique nature that may be asserted against Plaintiff individually, as distinguished from the other members of the Class, and the relief sought is common to the Class. Plaintiff does not have any interest that is in conflict with or is antagonistic to the interests of the members of the Class, and has no conflict with any other member of the Class. Plaintiff has retained competent counsel experienced in class action litigation, including consumer and financial services class actions, to represent him and the Class Members in this litigation.

52.    **Predominance and Superiority.** All of the requirements for Rule 23(b)(3) are satisfied because the common factual and legal issues identified above are sufficiently cohesive

to warrant adjudication by representation.  In particular, the Plaintiff and the Class Members

have suffered a common cause of injury, namely the Class Members' legal claims arise

exclusively under Washington law, and therefore contain the same standards of proof of liability.

Class action treatment is also superior to other available methods for the fair and efficient

adjudication of this controversy because individual litigation of the claims of all Class Members

is economically unfeasible and procedurally impracticable.  The likelihood of individual Class

Members prosecuting separate claims is remote, and even if every Class Member could afford

individual litigation, the court system would be unduly burdened by individual litigation in such

cases.  Additionally, individual litigation would also present the potential for varying,

inconsistent or contradictory judgments while magnifying the delay and expense to all parties

and to the court system, thus resulting in multiple trials of the same legal issue and creating the

possibility of repetitious litigation.  As a result, it is desirable to concentrate litigation in this

forum.  Plaintiff knows of no difficulty to be encountered in the management of this action that

would preclude its maintenance as a class action.  Relief concerning Plaintiff's rights under the

laws herein alleged and with respect to the Class is proper.

## VI.    CLAIMS FOR RELIEF

### COUNT 1 – BREACH OF EXPRESS WARRANTY AGAINST DEFENDANT KUMHO (NATIONWIDE CLASS).

53.    Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully
set forth herein.

54.    Plaintiff and Class Members are natural persons and legal entities and who

purchased brand new KLT02e tires, purchased vehicles and/or trailers that contained brand new

KLT02e tires as original equipment, and/or leased vehicles or trailers that contained brand new

KLT02e tires as original equipment (with Defendants' warranties assigned to them).

55.    Neither Hyundai who purchased the KLT02e for installation on its Hyundai

Trailers nor its authorized dealers who purchased and then resold or leased the Hyundai Trailers

equipped with the KLT02e tires from KUMHO were intended to be the ultimate consumers of

the KLT02e and thus have no rights under the warranty agreements provided with the Hyundai

Trailer or the KLT02e; instead, the express warranty agreement provided by KUMHO for the

KLT02e was designed for and intended to benefit of end user consumer of brand new KLT02e

tires such as Plaintiff and the above defined Classes.

     56.    Defendant KUMHO provided to Plaintiff and the Class the following express

warranty with respect to the KLT02e as contained in its Product Data Guide:

> *CONSUMER LIMITED WARRANTY FOR KUMHO*
> *& MARSHAL BRAND MEDIUM COMMERCIAL*
> *TRUCK TIRES*
>
> *I. WHAT IS WARRANTED AND WHO IS ELIGIBLE*
> *UNDER THIS WARRANTY*
>
> Kumho Tire U.S.A. Inc, 10299 6th Street, Rancho
> Cucamonga, California 91730, warrants to the original
> consumer purchaser that all KUMHO replacement radial
> tires either directly or through an authorized KUMHO
> dealer, and which are mounted on cars within the U.S.A.,
> and becomes unserviceable for any reason within the
> manufacturers control, such tire will be replaced with an
> equivalent KUMHO tire.

     57.    As set forth above, Defendant KUMHO, via the affirmations of facts and

promises in its Product Data Guide, expressly warranted that it would replace any the KLT02e

that "becomes ***unserviceable for any reason within the manufacturer's control***" for a period of

six (6) years from the date Plaintiff and the Class acquired these tires directly or through a

KUMHO authorized dealer. As alleged above, the KLT02e became unserviceable well within six

years from the date that Plaintiff and the Class acquired these tires and the reason for the defects

were well within the control of Defendant KUMHO.

     58.    Defendant KUMHO further warranted that the KLT02e tires were fit for the

ordinary purpose in which such goods are used, namely for long haul trucking and long haul

steering.

59.     Defendant KUMHO has received sufficient and timely notice of the breaches of warranty alleged herein. Despite this notice and KUMHO's knowledge of the defect in its KLT02e tires, KUMHO has failed and refused to honor its express warranty, even though it knew of the defect inherent in the KLT02e.

60.     Plaintiff and members of the Class have given KUMHO a reasonable opportunity to cure its failures with respect to its warranty, and KUMHO has failed and refused to do so.

61.     Defendant KUMHO has failed to provide Plaintiff and members of the Class, as a warranty repair and/or replacement, a product that conforms to the qualities and characteristics that KUMHO warranted with respect to the KLT02e. As a direct and proximate cause of Defendant KUMHO's acts and omissions, Defendant KUMHO has breached its express warranty as to the KLT02e to Plaintiffs and the Class, which presents a nationwide question of liability.

62.     As result of KUMHO's breach of warranty, Plaintiff and members of the Class have suffered damages, injury in fact, and/or ascertainable loss, in an amount to be determined at trial.

## COUNT 2 – BREACH OF EXPRESS WARRANTY AGAINST DEFENDANT HYUNDAI (NATIONWIDE CLASS).

63.     Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth herein.

64.     Plaintiff and Class Members are natural persons and legal entities and who purchased brand new KLT02e tires, purchased vehicles and/or trailers that contained brand new KLT02e tires as original equipment and/or leased vehicles or trailers that contained brand new KLT02e tires as original equipment (with Defendants' warranties assigned to them). end user consumers such as Plaintiff.

65.     The authorized dealers who purchased and then resold or leased the Hyundai Trailers equipped with the KLT02e tires from KUMHO were not intended to be the ultimate consumers of the and have no rights under the warranty agreements provided with them or the

KLT02e; instead, the express warranty agreement provided by KUMHO for the KLT02e was designed for and intended to benefit of end user consumer of brand new KLT02e tires such as Plaintiff and the above defined Classes.

66.    Defendant Hyundai provided to Plaintiff and the Class the following express warranty with respect to the Hyundai Trailer:

> Hyundai Translead ("Manufacturer") hereby warrants to the original purchaser ("Purchaser") of each new Hyundai Translead trailer van, container, chassis, and converter dolly ("Product") that the Product will be free from defects in materials and workmanship for a period of five years, if properly maintained and used in normal service. "Normal service" means usage in the manner and for the purposes for which such Products are customarily utilized, and includes the loading, unloading and carriage of uniformly distributed legal loads of noncorrosive cargo, properly secured, in a manner that does not subject the Product to strains or impacts greater than those normally imposed during lawful use on well-maintained public roads, with a gross vehicle weight that does not exceed the gross vehicle weight rating (GVWR) specified on the vehicle identification plate affixed to the vehicle by the Manufacturer prior to delivery.

67.    As set forth above, Defendant Hyundai, via the affirmations of facts and promises in its Product Data Guide, expressly warranted that its Hyundai Trailers would be free from defects in materials and workmanship" for a period of five (5) years from the date Plaintiff and the Class acquired these trailers. As alleged above, the KLT02e was defective and became unserviceable well within five (5) years from the date that Plaintiff and the Class acquired the Hyundai Trailers which were furnished with brand new KLT02e tires.

68.    Defendant Hyundai further warranted that its Hyundai Trailers furnished with the KLT02e were fit for the ordinary purpose in which such goods are used, namely for long haul trucking and long haul steering.

69.    Defendant Hyundai has received sufficient and timely notice of the breaches of warranty alleged herein. Despite this notice and Hyundai's knowledge of the defect in the

KLT02e tires, Defendant Hyundai has failed and refused to honor its express warranty, even though it knew of the defect inherent in the KLT02e.

70.     Plaintiff and members of the Class have given Hyundai a reasonable opportunity to cure its failures with respect to its warranty, and Hyundai has failed and refused to do so.

71.     Defendant Hyundai has failed to provide Plaintiff and members of the Class, as a warranty repair and/or replacement, a product that conforms to the qualities and characteristics that KUMHO warranted with respect to its Hyundai Trailers furnished with the KLT02e. As a direct and proximate cause of Defendant Hyundai's acts and omissions, Defendant KUMHO has breached its express warranty as to the Hyundai Trailers furnished with KLT02e to Plaintiffs and the Class, which presents a nationwide question of liability.

72.     As result of Hyundai's breach of express warranty, Plaintiff and members of the Class have suffered damages, injury in fact, and/or ascertainable loss, in an amount to be determined at trial.

## COUNT 3 – VIOLATIONS OF MAGNUSON-MOSS ACT (15 U.S.C. §§ 2301-2312) AGAINST DEFENDANT KUMHO (NATIONWIDE CLASS)

73.     Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth herein.

74.     Defendant KUMHO's KLT02e tires are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

75.     Plaintiff and members of the Class are "consumers" within the meaning of 15 U.S.C. § 2301(3). Indeed, Defendant KUMHO sold its tire to major consumer retailers, making the KLT02e available for purchase by household consumers through Wal-Mart, Northern Tool, SimpleTire.com, and other major retailers.

76.     Defendant KUMHO is a "warrantor" and "supplier" of the consumer products to consumers and a "warrantor" within the meaning of 15 U.S.C. § 2301(4-5).

23

77.     KUMHO provided written and implied warranties regarding its Maytag Centennial Washers to Plaintiff and members of the Class within the meaning of 15 U.S.C. § 2301(6-7). These warranties were identical in all material respects.

78.     KUMHO violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* by failing to comply with these written and implied warranties.

79.     Plaintiff and members of the Class sustained injuries and damages as a result of KUMHO's violation of their written and/or implied warranties.

80.     Defendant KUMHO has received sufficient and timely written notice of the breaches of warranty alleged herein. Despite receipt of this written notice, KUMHO has refused to comply with its warranty obligations or otherwise honor its warranty obligations as described herein.

81.     All jurisdictional prerequisites have been satisfied.

82.     By Defendant's conduct as described herein, including KUMHO's knowledge of the defective KLT02e tires and its action, and inaction, in the face of that knowledge, Defendant KUMHO has failed to comply with its obligations under its written and implied promises, warranties, and representations.

83.     As a result of Defendant's breach of express and implied warranties, Plaintiff and members of the Class are entitled to revoke their acceptance of the KLT02e tires, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

### COUNT 4 – NEGLIGENCE AGAINST DEFENDANTS KUMHO AND HYUNDAI (ARKANSAS AND LOUISIANA CLASS).

84.     Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth herein.

85.     Defendants KUMHO and Hyundai owed the Plaintiff and Class Members the duty to exercise reasonable and ordinary of care to ensure that the KLT02e tires and the Hyundai Trailers equipped with the KLT02e tires were designed and manufactured in such as manner as to be safe and to last for their intended life.

86.     These Defendants also had a duty notify Plaintiff and the Class members of the defects in the KLT02e and to take remedial action so as to reduce the harm sustained by them as the result of the KLT02e. Defendants breached these duties proximately causing damage to the Plaintiff and the Class of consumers in Arkansas, and Louisiana.

87.     The States of Arkansas and Louisiana do not recognize the "economic loss doctrine" – the doctrine that absent personal injury or injury to "other property," a party whose defective product has failed and only damaged itself can only sue in contract, as opposed to tort.

In these States, tort claims for loss of the defective product may be maintained. *See, Bayer CropScience LP v. Schafer*, 385 S.W.3d 822, 832 (Ark. 2011)("As the rice farmers correctly point out, this court has declined to recognize the economic-loss doctrine in cases of strict liability, as we allow the recovery of purely economic losses, even where the damage relates only to the defective product"), citing *Farm Bureau Ins. Co. v. Case Corp.*, 317 Ark. 467, 878 S.W.2d 741 (1994); *Berkeley Pump Co. v. Reed-Joseph Land Co.*, 279 Ark. 384, 653 S.W.2d 128 (1983); *Blagg v. Fred Hunt Co.*, 272 Ark. 185, 612 S.W.2d 321 (1981)).

### COUNT 5 – UNJUST ENRICHMENT (NATIONWIDE CLASS)

88.     Plaintiff incorporate all allegations of fact in all preceding paragraphs as if fully set forth herein.

89.     An economic benefit was conferred upon Defendants by Plaintiff and the Class Members by the payment for the KLT02e tires. Defendants ultimately received and benefitted from such monetary benefit. Defendants' acceptance and retention of such benefit under such circumstances is inequitable and unjust in light of the inherently defective and dangerous nature of the KLT02e tires.

90.     As a result of Defendants' wrongful conduct, Plaintiff and the Class are entitled to restitution and the institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendants.

## COUNT 6 – VIOLATIONS OF THE ARKANSAS PRODUCT LIABILITY ACT
## PURSUANT TO ARKANSAS CODE § 16-116-101
## (ARKANSAS CLASS)

91.     Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth herein.

92.     Pursuant to Section 16-116-101 of the Arkansas Code, a supplier of a product is subject to liability in damages for harm to a person or property if:  (1) the supplier is engaged in the business of manufacturing, assembling, selling, leasing, or otherwise distributing the product; (2) the product was supplied by him or her in a defective condition that rendered it unreasonably dangerous; and (3) the defective condition was a proximate cause of the harm to a person or to property.

93.     Each of the Defendants is engaged in the business of variously manufacturing, assembling, selling, leasing, or otherwise distributing KLT02e tires and is a "supplier" for the purposes of Section 16-116-101 of the Arkansas Code.

94.     KLT02e tires are a dangerous and defective product.  Defendants determined to ignore the dangerous and defective conditions posed by the KLT02e and even took steps to deny their express warranties and the existence of any problem with the KLT02e, though privately they knew that the KLT02e was defective and dangerous.

95.     The dangerous and defective condition of the KLT02e tires was a proximate cause of the harm to Plaintiffs.

96.     Each Defendant is strictly liable for all damages to each Plaintiff in the Arkansas class proximately caused by KLT02e tires.

## COUNT 7 – VIOLATIONS OF THE LOUISIANA PRODUCTS LIABILITY ACT
## PURSUANT TO LOUISIANA REVISED STATUTES § 9:2800.51 *et seq.*
## (LOUISIANA CLASS)

97.     Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth herein.

98.     Pursuant to Section 9:2800.54 of the Louisiana Revised Statutes, the manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonable dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.

99.     Each of the Defendants is engaged in the business of variously manufacturing, assembling, selling, leasing, or otherwise distributing KLT02e tires and is a "manufacturer" for the purposes of Section 9:2800.53 of the Louisiana Revised Statutes.

100.    KLT02e tires are unreasonably dangerous in design pursuant to Section 9:2800.56 of the Louisiana Revised Statutes and are therefore a defective product.

101.    Defendants determined to ignore the dangerous and defective conditions posed by the KLT02e and even took steps to deny their express warranties and the existence of any problem with the KLT02e, though privately they knew that the KLT02e was defective and dangerous. The KLT02e tires are therefore unreasonably dangerous because an adequate warning about the product was not provided indicating to Plaintiffs that the KLT02e tires possessed a characteristic that may cause damage pursuant to Section 9:2800.57 of the Louisiana Revised Statutes.

102.    KLT02e tires were likewise unreasonably dangerous because they did not conform to the Defendants' express warranties as alleged herein, pursuant to Section 9:2800.58 of the Louisiana Revised Statutes.

103.    The dangerous and defective condition of the KLT02e tires existed at the time the product left the control of Defendants.

104.    The dangerous and defective condition of the KLT02e tires was a proximate cause of the harm to Plaintiffs.

105.    Each Defendant is strictly liable for all damages to each Plaintiff in the Louisiana class proximately caused by KLT02d tires.

**COUNT 8 – VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT PURSUANT TO ARKANSAS CODE § 4-88-101, *et seq.***
**(ARKANSAS CLASS)**

106.   Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth herein.

107.   Each of the Defendants is a "person" for the purposes of the Arkansas Deceptive Trade Practices Act pursuant to Section 4-88-102(3) of the Arkansas Code.

108.   KLT02e tires constitute a "good" within the meaning of Section 4-88-102(6) of the Arkansas Code.

109.   Pursuant to Section 4-88-108 of the Arkansas Code, it is unlawful for any person to use deception, fraud, or false pretense in, or to conceal, suppress, or omit material facts in connection with the sale or advertisement of goods, such as KLT02e tires.

110.   Pursuant to Section 44-88-107(1) of the Arkansas Code, it is unlawful for any person to knowingly make false representations as to the characteristics of goods, such as KLT02e tires.

111.   Pursuant to Section 4-88-107(a)(10), it is unlawful in Arkansas to engage in an "unconscionable, false, or deceptive act or practice in business, commerce, or trade." Further, pursuant to Section 4-88-107(b) of the Arkansas Code, "[t]he deceptive and unconscionable trade practices listed in this section are in addition to and do not limit the types of unfair trade practices actionable at common law or under other statutes of this state."

112.   Defendants engaged in unconscionable, false, and deceptive acts and practices in selling and/or leasing the KLT02e tires while knowing that the KLT02e tires are dangerous, defective, and without value.

113.   Defendants' customers and lessees, including Plaintiff and members of the putative classes, were subjected to suppression, concealment, and omission of material facts as a product of collusive, unlawful efforts by Defendants to control the market and suppress, conceal, and omit from Plaintiffs, and others similarly situated, that the KLT02e tires were dangerous,

defective, and without value and posed a risk to Plaintiff, the members of the putative class, and to others.

114.    As a result of Defendants' fraudulent concealment of their conspiracy and unlawful, unconscionable, false, fraudulent, unfair, and deceptive conduct directed towards Plaintiffs, the running of any statute of limitations has been tolled with respect to any claims that Plaintiff and the putative class members may have as a result of the wrongful and unlawful conduct alleged in this Class Action Complaint.

115.    Plaintiffs have a cause of action against each Defendant pursuant to Section 4-88-113 of the Arkansas Code to recover their damages caused by the KLT02e tires, as well as reasonable attorneys' fees.

### COUNT 9 – REDHIBITION (LOUISIANA CLASS)

116.    Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth herein.

117.    Pursuant to Article 2520 of the Louisiana Civil Code:

> The seller warrants the buyer against redhibitory defects, or vices, in the thing sold. A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale. A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

118.    Due to their defective and dangerous nature, the KLT02e tires are rendered useless and so inconvenient that it must be presumed that Plaintiffs would not have bought the KLT02e tires had they known of the defects.

119.    The defects in the KLT02e tires likewise diminish the usefulness of their value so that it must be presumed that Plaintiffs would have bought the KLT02e tires for a lesser price, if at all.

120.     Plaintiffs have a cause of action against each Defendant pursuant to Article 2520 of the Louisiana Civil Code.

## COUNT 10 – CIVIL CONSPIRACY (NATIONWIDE CLASS)

121.     Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth herein.

122.     Each Defendant entered into a tacit agreement of common design to defraud Plaintiffs and otherwise conceal the dangerous and defective nature of the KLT02e tires while avoiding their legal obligations to Plaintiffs.

123.     Defendants' conspiracy was continuing in nature, with each Defendant making and continuing to engage in overt acts in furtherance of the conspiracy throughout the relevant time period alleged in this Class Action Complaint.

124.     Defendants' continuing conspiracy has proximately caused Plaintiffs to sustain damages, injury in fact, and/or ascertainable loss, in an amount to be determined at trial.

## VII. PRAYER FOR RELIEF

WHEREFORE, the named Plaintiff and the Class Members demand judgment against Defendant KUMHO Tire U.S.A, Inc., Hyundai Translead, Inc, and Hyundai de Mexico on each Count of the Complaint and pray for the following relief:

1.     Issue service of process and serve each Defendant;

2.     Issue an Order certifying that this action may be maintained as a class action, appointing Plaintiff and his counsel to represent the Class, and directing that reasonable notice of this action be given by Defendants to all Class Members;

3.     Grant any reasonable request to Amend Plaintiff's Class Action Complaint to conform to the discovery and evidence obtained in this Class Action;

4.     Empanel a jury to try this matter;

5.     Award to Plaintiff and the Class Members their compensatory damages consistent with their claims for relief and in an amount not less than $60,000,000.00;

6.     Award costs and expenses incurred in this action pursuant to Rule 54 of the

Federal Rules of Civil Procedure;

7.     Award pre-and post-judgment interest as allowed by law;

8.     Grant the Plaintiff and Class Members such further relief as the Court may deem

just and proper.

DATED this 27th day of December, 2018.

Respectfully submitted,

By: _____

Frank L. Watson, III (Tenn. Bar No. 15073)
William F. Burns (Ark. Bar No. 2008019; Tenn.
Bar No. 17908)
William E, Routt (Tenn. Bar. No. 28577)
WATSON BURNS, PLLC
253 Adams Avenue
Memphis, Tennessee 38103
Phone: (901) 529-7996
Fax: (901) 529-7998
Email:  fwatson@watsonburns.com
Email:  bburns@watsonburns.com
Email:  wroutt@watsonburns.com

*Counsel for Plaintiff Hog Wild Trucking, LLC, and
the absent Class Members*