# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS

-------------------------------------------------------------------- X
                                        :

HOG WILD TRUCKING, INC., on behalf of itself   :      Case No.: 3:18-CV-00254-BSM
and all similarly situated persons and entities,    :

                                     :

               Plaintiffs,        :

    vs.                                :

                                   :

KUMHO TIRE U.S.A., INC., a California corporation;:
HYUNDAI TRANSLEAD, INC., a California     :
corporation; and HYUNDAI de MEXICO, S.A., a   :
foreign corporation,                 :

             Defendants.       :
-------------------------------------------------------------------- X

## BRIEF IN SUPPORT OF DEFENDANT KUMHO TIRE U.S.A., INC.'S
## <u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

Michael D. Barnes (88071)
Gary D. Marts, Jr. (2004116)
Michael A. Thompson (2010146)
**Wright, Lindsey & Jennings LLP**
200 West Capitol Avenue, Suite 2300
Little Rock, AR 72201
T: (501) 371-0808
F: (501) 376-9442
E: mbarnes@wlj.com
   gmarts@wlj.com
   mthompson@wlj.com

**Littleton Park Joyce Ughetta & Kelly LLP**
C. Scott Toomey, Esq. (*Pro Hac Vice*)
201 King of Prussia Rd., Ste. 220
Radnor, PA  19087
T: (484) 254-6220
F: (484) 254-6221
E: scott.toomey@littletonpark.com

Attorneys for Defendant Kumho Tire U.S.A., Inc.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.................................................................................................ii

INTRODUCTION ............................................................................................................ 1

BACKGROUND .............................................................................................................. 2

LEGAL STANDARD ....................................................................................................... 4

ARGUMENT .................................................................................................................... 4

   I.   PLAINTIFF LACKS STANDING TO BRING CLAIMS UNDER THE LAWS OF
STATES OTHER THAN ARKANSAS. ................................................................... 4

   II.  KTUSA IS NOT SUBJECT TO PERSONAL JURISDICTION IN ARKANSAS  FOR
CLASS MEMBERS' CLAIMS WITH NO CONNECTION TO ARKANSAS. .............. 6

      A.   KTUSA is Not Present in Arkansas and is Not Subject to General Jurisdiction in
Arkansas. ...................................................................................................... 7

      B.   KTUSA is Not Subject to Specific Jurisdiction in Arkansas for Class Members'
Claims with No Connection to Arkansas. .................................................... 8

   III.  PLAINTIFF'S NATIONWIDE UNJUST-ENRICHMENT CLAIM FAILS FOR
MULTIPLE REASONS.......................................................................................... 12

   IV.  CLAIMS MADE PURSUANT TO LOUISIANA LAW FAIL AS A MATTER OF
LAW OR ARE TIME BARRED............................................................................. 13

   V.   PLAINTIFF CANNOT RECOVER UNDER THE MAGNUSON MOSS WARRANTY
ACT BECAUSE THE KLT02e TIRE IS NOT A CONSUMER PRODUCT AND
PLAINTIFF IS NOT A CONSUMER................................................................... 16

   VI.  ARKANSAS' STATUTES OF LIMITATIONS PRECLUDE A RECOVERY ON
MANY OF THE ARKANSAS CLAIMS ASSERTED IN THE COMPLAINT. ............ 17

   VII. PLAINTIFF'S COMPLAINT FAILS TO MAKE OUT A COGNIZABLE CLAIM
FOR CIVIL CONSPIRACY UNDER ARKANSAS LAW. ............................................ 18

   VIII.THE COMPLAINT FAILS TO ADEQUATELY PLEAD A CLAIM UNDER THE
ARKANSAS DECEPTIVE TRADE PRACTICES ACT, A.C.A. § 4-88-101, *et seq.* .... 20

CONCLUSION ............................................................................................................... 22

## **TABLE OF AUTHORITIES**

**Cases**

*Allen v. Allison*, 356 Ark. 403, 413 (2004) .................................................................. 18

*Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ........................................................ 4, 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ..................................................... 4

*Braden v. Wal.Mart Stores, Inc.*, 588 F. 3d 585, 594 (8th Cir. 2009) ............................ 18

*Briehl v. GMC*, 172 F.3d 623 (8th Cir. 1999) .................................................................... 4

*Bristol-Meyers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780-81 (2017)................. 6, 8-12

*Chevron USA INC v. Aker Mar. Inc.,* 604 F. 3d 888, 899 (5th Cir. 2010) .................................. 14

*Corcoran v. CVS Health Corp.,* 169 F.Supp.3d 970, 990 (N.D. Cal 2016)........................... 5

*Crume v. Ford Motor Co.*, 60 Ore. App. 224, 653 P. 2d 564 (Or. App. 1982) ........................... 16

*Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) ................................................... 7, 8

*DeBernardis v. NBTY, Inc.*, No. 17 C 6125, 2018 U.S. Dist. LEXIS 7947, at *6 (N.D. Ill. Jan. 18, 2018) ...................................................................................................... 11

*Goodwin v. Magness Oil Co.*, 552 S.W. 3d 26, 30-31 (Ark. App. 2018).................................. 10

*Hager v. Arkansas Dept. of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013)................................ 4

*Hargrove v. Boston Scientific Corp.,* 2014 U.S. Dist. LEXIS 135262 *21-24 (E.D. La. 2014) .. 14

*In re Dental Supplies Antitrust Litig*., No. 16 Civ. 696, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017) ...................................................................................................... 10

*In re Ditropan XL Antitrust Litig*., 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007)....................... 4

*In re Gen. Motors Corp. Anti–Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997)........................................................................................................... 4

*Insulate SB, Inc. v. Advanced Finishing Sys., Inc.,* No. 13–2664, 2014 WL 943224 (D. Minn. Mar. 11, 2014)..................................................................................................... 5

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ......................................................... 6

*Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1086 (E.D. Ark. 2013).................... 12

*Kwiatkowski v. Volvo Trucks N. Am., Inc.*, 500 F. Supp. 2d 875, 876 (N. D. Ill 2007)............... 16

*Lawson v. Simmons Sporting Goods, Inc.*, 553 S.W. 3d 190, 195 (Ark. App. 2018)............. 10, 12

*Lewis v. Casey*, 518 U.S. 343, 357 (1996) ................................................................ 4, 13, 20, 21

*Martin v. Arthur*, 339 Ark. 149 (1999) ............................................................................ 17

*McDonnell v. Nature's Way Prods*., LLC, No. 16 C 5011, 2017 WL 4864910, at *4 (N.D. Ill. Oct. 26, 2017) ...................................................................................................... 10

*Miller v. Nippon Carbon Co.,* 528 F.3d 1087, 1089 (2008) ........................................................ 6

*Mollicone v. Universal Handicraft, Inc.,* No. 2:16-cv-7322-CAS, 2017 WL 440257, at *9-10 (C.D. Cal. Jan. 30, 2017) .................................................................................... 5

*Nance v. Humane Soc'y of Pulaski Cty*., No. 4:15-CV-00384-BRW, 2015 WL 6638836, *3 (E.D. Ark. Sept. 29, 2015), aff'd, 667 F. App'x 879 (8th Cir. 2016) ................................... 18

*Pitre v. Yamaha Motor Co.,* 51 F. Supp. 3d 644, 669-671 (E.D. La. 2014) .................... 5, 13, 14

*Pruitt v. Sw. Energy Co.*, 2013 U.S. Dist. LEXIS 19301 at *5 (E.D. Ark. Feb. 13, 2013) ...... 4, 20

*Roach Mfg. Corp. v. Northstar Indus., Inc.,* 630 F. Supp. 2d 1004 (E.D. Ark. 2009)................. 17

*Robinson v. Mine Safety Appliances Co.*, 795 F.3d 879, 880 (8th Cir. 2015) ............................... 17

*Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988) ........................................................ 18

*Safeco Ins. Co. of America v. Chrysler Corp.,* 834 So. 2d 1026, 1046 (La. App. 2002).............. 14

*Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014)...................................................... 4

*Varner v. Peterson Farms,* 371 F.3d 1011, 1018 (8th Cir. 2004)...................................... 12, 13, 17

*Walsh v. Ford Motor Credit Co.*, 113 Misc. 2d, 449 N.Y.S. 2d 556 (N.Y. Sup. Ct. 1982) ......... 16

*Wenokur v. AXA Equitable Life Ins. Co*., No. CV-17-00165-PHX-DLR, 2017 WL 4357916, at
    *4, n.4 (D. Ariz. Oct. 2, 2017) ........................................................................................... 10

*West Wind Air LLC v. Thrush Aircraft, Inc.,* 2018 U.S. Dist. LEXIS 132469 (E.D. Ark. 2018). 10

*Whatley v. Recontrust Co.,* 2010 U.S. Dist. LEXIS 1251 at *6 (E.D. Ark. Nov. 23, 2010)..... 4, 20

**Statutes**

La. Rev. Stat. § 9:2800.52.................................................................................................................... 13

La. Rev. Stat. § 9:2800.53....................................................................................................................14

**Other Authorities**

15 U.S.C.S. § 2310.............................................................................................................................. 16

A.C.A. § 16-116-203 .......................................................................................................................... 17

A.C.A. § 16-56-105 ............................................................................................................................ 17

A.C.A. § 4-88-101, *et seq.* ............................................................................................................. 1, 20

La. Civ. Code Art. 2520................................................................................................................ 13, 14

La. Civ. Code Art. 2534................................................................................................................13, 15

La. Civ. Code Art. 2545....................................................................................................................13

15 U.S.C.S. § 2301 et seq. .................................................................................................................. 16

William E. Crawford, *12 Louisiana Civil Law Treatise* § 16:11 (2d ed. 2013) .......................... 13

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................................ 13, 18

Fed. R. Civ. P. 8 ............................................................................................................................. 4, 18

Fed. R. Civ. P. 9(b) ....................................................................................................................... 4, 20

**INTRODUCTION**

In this putative class action, Plaintiff Hog Wild Trucking, Inc. ("Hog Wild") attempts to bring a panoply of nationwide and state-specific class claims on behalf of commercial trucking entities and retail customers against three companies standing in different economic relationships to each other (and to all users) seeking a variety of damages for a spectrum of alleged wrongful deeds spanning years.  Plaintiff's claims fail for multiple reasons:

1.      Plaintiff lacks standing to represent absent class members in the forty-nine states in which it does not reside and in which it suffered no injury.

2.      The Court should dismiss all "nationwide" claims brought on behalf of absent class members with no connection to Arkansas and all Louisiana state law claims because the Court lacks personal jurisdiction.

3.      Plaintiff's express warranty claim under Arkansas law precludes a parallel claim for unjust enrichment, a preclusion that eliminates Plaintiff's standing to bring unjust enrichment claims on behalf of absent non-Arkansas class members.

4.      The claims made pursuant to Louisiana law fail to state a claim on which relief can be granted either substantively or because they are time barred.

5.      The Complaint fails to state a claim on which relief can be granted pursuant to the Magnuson Moss Warranty Act.

6.      Arkansas' statutes of limitations require the dismissal of Counts 4, 5, 6 and 10 of the Complaint, and the concomitant dismissal of similar claims by non-Arkansas class members.

8.      The Complaint fails to state a claim for civil conspiracy, requiring dismissal.

9.      The Complaint fails to adequately plead a claim under the Arkansas Deceptive Trade Practices Act, A.C.A. § 4-88-101, *et seq.*, requiring dismissal.

## BACKGROUND

Plaintiff alleges that Kumho brand KLT02e commercial truck tires manufactured between 2013 and 2016 wore out prematurely, due to a narrow radial belt and a rubber compound that was allegedly too soft. Doc. #1, (Compl. ¶ 26). Plaintiff claims that the tires were designed to serve as dual use "low rolling resistance" tires; that is, low rolling resistance tires that could be used both as "pulled" tires and as "steering" tires on commercial trucks and trailers. Compl. ¶24. Low rolling resistance tires provide lower friction to save fuel while at the same time providing greater wear and traction. Compl. ¶ 21.

The Complaint alleges that Kumho Tire USA, Inc. ("KTUSA") was the manufacturer and distributor of the Kumho brand KLT02e commercial truck tires. Compl. ¶ 10. KTUSA only imports and distributes Kumho brand tires. *See* Declaration of Seonghui Heo attached as Exhibit A. KTUSA does not design or manufacture tires. *See id.* The Complaint also may improperly attribute various actions and statements to KTUSA. *See, e.g.,* Compl. ¶ 42. For purposes of this motion, the distinction between KTUSA and the manufacturer carries no significance.

Plaintiff further alleges Defendants Hyundai Translead, Inc. and Hyundai de Mexico, S.A. (collectively "Hyundai" for purposes of this motion) installed KLT02e model tires on "Dry Van Series" trailers. Compl. ¶ 28.

In the summer of 2015, Plaintiff leased some number of Hyundai trailers equipped with the KLT02e model tires from Fleet Equipment LLC ("Fleet Equipment"). Compl. ¶ 31. Plaintiff does not identify from which location of Fleet Equipment it leased the Hyundai trailers. Plaintiff apparently did not purchase KLT02e tires other than those already installed on the Hyundai trailers leased from Fleet Equipment. Compl. ¶ 31.

2

By October 2015, Plaintiff noticed what it believed to be unusual and premature wear; that is, "that the KLT02e was wearing out way too soon." Compl. ¶ 32. Plaintiff alleges that it advised Fleet Equipment of the premature wear, and that Fleet Equipment in turn notified both KTUSA and Hyundai. Compl. ¶ 33. In addition to sending representatives on April 7, 2016 to Plaintiff's place of business to investigate the tires' condition, KTUSA sent representatives to several dealers' locations to investigate the issues. Compl. ¶ 36-38.

Despite allegedly acknowledging to Plaintiff directly and to others that the rubber compound used in designing the tires was too soft, KTUSA allegedly refused to honor its warranty, instead steering customers to other more expensive tires. Compl. ¶¶ 36-39. According to the Complaint, Hyundai provided credit to Fleet Equipment for the allegedly defective tires, but Fleet Equipment passed none of that compensation on to Plaintiff or any other users. Compl. ¶ 42.

Plaintiff's claims against KTUSA can be broadly categorized into those brought on behalf of nationwide classes and those brought on behalf of state-specific classes. Plaintiff advances four claims against KTUSA on behalf of the purported nationwide classes: 1) breach of express warranty (Count 1); 2) violations of the Magnuson Moss Warranty Act (Count 3); 3) unjust enrichment (Count 5); and 4) civil conspiracy (Count 10). The Complaint also asserts one claim for negligence on behalf of consumers residing in Arkansas and Louisiana (Count 4). It asserts two additional claims on behalf of Arkansas consumers only: 1) for violations of the Arkansas Product Liability Act (Count 6); and 2) for violations of the Arkansas Deceptive Trade Practices Act (Count 8). Finally, the Complaint alleges claims on behalf of Louisiana consumers only for: 1) violation of the Louisiana Products Liability Act (Count 7); and 2) redhibition (Count 9).

## LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009), *quoting*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facts that only allow a court to infer "the mere possibility of misconduct," therefore, do not satisfy Fed. R. Civ. P. 8. *Id.* at 679. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014), *quoting*, *Iqbal*, 556 U.S. at 678). Similarly, a court "must not presume the truth of legal conclusions couched as factual allegations." *Hager v. Arkansas Dept. of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).

Many of Plaintiff's allegations are also subject to Fed. R. Civ. P. 9(b)'s particularity requirement, including those made pursuant to the Arkansas Deceptive Trade Practices Act. *See In re Gen. Motors Corp. Anti–Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997), *aff'd, Briehl v. GMC*, 172 F.3d 623 (8th Cir. 1999); *Pruitt v. Sw. Energy Co.*, 2013 U.S. Dist. LEXIS 19301 at *5 (E.D. Ark. Feb. 13, 2013); *Whatley v. Recontrust Co.,* 2010 U.S. Dist. LEXIS 1251 at *6 (E.D. Ark. Nov. 23, 2010).

## ARGUMENT

## I.     PLAINTIFF LACKS STANDING TO BRING CLAIMS UNDER THE LAWS OF STATES OTHER THAN ARKANSAS.

In a class action, the named plaintiff must allege and prove that it personally has standing with respect to each claim being made, "not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996); *In re Ditropan XL Antitrust Litig*., 529 F. Supp. 2d 1098, 1107 (N.D.

Cal. 2007) (citing cases). Where a representative plaintiff is lacking for a particular state, all claims based on that state's laws must be dismissed because no named plaintiff has standing to assert them. *See id.* (dismissing claims based on the laws of states where none of the named plaintiffs resided or purchased the product)*; Pitre v. Yamaha Motor Co.,* 51 F. Supp. 3d 644, 669-671 (E.D. La. 2014) (collecting cases); *see also Mollicone v. Universal Handicraft, Inc.,* No. 2:16-cv-7322-CAS, 2017 WL 440257, at *9-10 (C.D. Cal. Jan. 30, 2017) (finding "the majority of courts to consider this question" have so held); *Corcoran v. CVS Health Corp.,* 169 F.Supp.3d 970, 990 (N.D. Cal 2016) (same; finding that courts "routinely" dismiss such claims); *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.,* No. 13–2664, 2014 WL 943224 (D. Minn. Mar. 11, 2014) (finding that plaintiff lacked standing to assert violations of antitrust and consumer protection claims on behalf of other states laws because it had not suffered injury in other states). Simply, a named plaintiff who does not reside in or purchase the product in the state under whose law it purports to assert a claim lacks standing to pursue those claims.

Here, Plaintiff alleges that it resides at a single location in Jonesboro, Arkansas. Compl. ¶ 5. Plaintiff claims that it leased a certain number of trailers equipped with the subject tires from Fleet Equipment. Compl. ¶ 31. The Complaint does not allege where those transactions took place. No connection between Plaintiff and any other state appears in the Complaint. Having alleged no connection to or injury in any state other than Arkansas, Plaintiff has standing to pursue claims only on behalf of absent class members under Arkansas law. Claims brought under the laws of the forty-nine other states, then, should be dismissed.

While the Complaint cites no specific laws from the forty-eight other non-Arkansas states, it takes pains to make specific allegations under Louisiana law. But Plaintiff is not a Louisiana citizen, nor does it have any operations in Louisiana. Compl. ¶ 5. The Complaint

does not allege that Plaintiff undertook any relevant transaction in Louisiana and does not allege that Plaintiff sustained any damages in Louisiana.  No connection between the Plaintiff and Louisiana appears at all in the Complaint.  As with claims made under the laws of the other forty-eight non-Arkansas states, Plaintiff lacks standing to bring claims on behalf of absent class members under Louisiana law.  The claims should be dismissed with prejudice.

## II.     KTUSA IS NOT SUBJECT TO PERSONAL JURISDICTION IN ARKANSAS FOR CLASS MEMBERS' CLAIMS WITH NO CONNECTION TO ARKANSAS.

The claims brought by class members with no connection to Arkansas must be dismissed because KTUSA is not subject to personal jurisdiction in this Court for those claims.  Going back to the Supreme Court's seminal decision in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), courts have recognized two types of personal jurisdiction: general jurisdiction (also referred to as "all-purpose" jurisdiction), and specific jurisdiction (also referred to as "case-linked" jurisdiction).  *See Bristol-Meyers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780-81 (2017). For the Court to exercise personal jurisdiction over KTUSA in this case, Plaintiff must establish either: (a) that KTUSA's contacts with the State of Arkansas are so "continuous and systematic" as to render it essentially "at home" in the State and subject it to general jurisdiction, or (b) that the Plaintiff's (and absent class members') claims arise from some local activity or conduct by KTUSA sufficient to warrant the exercise of specific jurisdiction in this case.

Where a defendant challenges an Arkansas court's personal jurisdiction over it, the plaintiff bears the burden of establishing that the defendant's contacts with Arkansas are sufficient. *See Miller v. Nippon Carbon Co.,* 528 F.3d 1087, 1089 (2008).  In evaluating a defendant's motion to dismiss on personal jurisdiction grounds, the Court may consider affidavits from a defendant setting forth facts that demonstrate a lack of contacts with the state.

*See id.*  As demonstrated below, KTUSA is not subject to general jurisdiction in Arkansas and is not subject to specific jurisdiction here for the claims of non-Arkansas class members.

### A.    KTUSA is Not Present in Arkansas and is Not Subject to General Jurisdiction in Arkansas.

KTUSA is not subject to general jurisdiction in Arkansas because it lacks the continuous and systematic contacts necessary to render it "at home" in Arkansas.  A corporation may only be subject to jurisdiction where it is incorporated, where it has its principal place of business, or where its contacts with the State are "so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014).  To establish general jurisdiction, Plaintiff would need to establish that KTUSA's contacts with Arkansas are sufficient to render it "at home" here.

But the Complaint does not allege facts sufficient to subject KTUSA to general jurisdiction in Arkansas.  Rather, the Complaint asserts conclusory allegations that KTUSA has "substantial and continuous contacts" with Arkansas.  Compl. ¶ 9. These bare allegations are not sufficient to sustain Plaintiffs' burden of establishing a basis for general jurisdiction.

In contrast, the attached declaration of KTUSA's Quality Assurance Manager, Seonghui Heo, demonstrates that KTUSA does *not* have contacts with Arkansas sufficient to subject it to general jurisdiction here. More specifically, KTUSA:

> Did not import commercial truck tires for Arkansas alone or specifically;
>
> Did not create a marketing strategy for Arkansas;
>
> Does not maintain any office in Arkansas;
>
> Does not employ any personnel in Arkansas;
>
> Does not own any real property in Arkansas; and

Does not maintain any bank or other financial accounts in Arkansas.[1]

Simply, general jurisdiction over KTUSA in Arkansas in this case is impossible.

**B.     KTUSA is Not Subject to Specific Jurisdiction in Arkansas for Class Members' Claims with No Connection to Arkansas.**

With no possibility of general jurisdiction, Plaintiff must allege sufficient facts to establish specific jurisdiction over KTUSA.  Plaintiffs cannot do so for absent class members whose claims have no connection to Arkansas.

Specific jurisdiction encompasses only those "cases in which the suit arise[s] out of or relate[s] to the defendant's contacts with the forum." *Daimler*, 134 S. Ct. at 749. "[T]here must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co*. 137 S. Ct. at 1780, *quoting, Goodyear*, 564 U.S. at 919. In other words, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers Squibb*, 137 S. Ct. at 1780.

In *Bristol-Myers Squibb*, the United States Supreme Court dismissed non-forum class members on the grounds that such class members could not gain "piggyback" jurisdiction by joining their claims with the claims of plaintiffs who had a connection to the forum state (there, California). In that case, a group of plaintiffs brought a class action alleging personal injuries arising out of their use of a prescription drug, Plavix, manufactured by Bristol-Myers Squibb. *Id*. at 1778.  The lawsuit was filed in California even though most of the plaintiffs were non-California residents and "all the conduct giving rise to the non-residents' claims occurred elsewhere." *Id*. at 1782.  Specifically, the Court noted that although Bristol-Myers Squibb sold Plavix into California, it did not develop, create a marketing strategy for, manufacture, label,

---

[1]     *See* Declaration of Seonghui Heo, attached hereto as Exhibit A, at ¶¶ 5-6.

package, or gain regulatory approval for Plavix in the State. *Id*. at 1778.  Additionally, none of the nonresident plaintiffs alleged that they received Plavix from a California source, that they were injured in California, or that they were treated for any injuries in California. *Id*.

Notwithstanding the lack of connection between the non-resident plaintiffs and California, the non-resident plaintiffs argued that, because their claims were similar to the claims of the California resident plaintiffs over whom specific jurisdiction existed in California, the California court also had specific jurisdiction over the non-resident plaintiffs' claims. *Id*. at 1779. The Supreme Court disagreed, holding that the "mere fact that other plaintiffs were prescribed, obtained and ingested [the drug at issue] in California – and allegedly sustained the same injuries as did the non-residents – does not allow the State to assert specific jurisdiction over the non-residents' claims [because] what is needed – and what is missing here – is a connection between the forum and the specific claims at issue." *Id*. at 1781 (emphasis in original). It further held that for a court to exercise specific jurisdiction there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Id*., *quoting*, *Goodyear*, 564 U.S. at 919).  Absent such a connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the state. *Id*.; *see also Goodyear*, 564 U.S. at 1931 n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."). Applying specific jurisdiction under these circumstances (based on a defendant's unrelated activities in the forum) would result in a "loose and spurious form of general jurisdiction." *Id*.  In dismissing the claims of the nonresident plaintiffs, the Supreme Court focused on the plaintiffs' activities in and connection to the forum in addition to the defendant's in-state activities.

In this case, just as in *Bristol-Myers Squibb*, no connection exists between the non-Arkansas plaintiffs' claims and KTUSA's activities in Arkansas.  Plaintiff's Complaint alleges neither that any non-Arkansas plaintiff purchased or received tires in Arkansas nor that any non-Arkansas plaintiff sustained any injury or damages in Arkansas.  Under these circumstances, pursuant to the holding in *Bristol-Myers Squibb*, this Court does not have specific jurisdiction over the claims brought by non-Arkansas plaintiffs.

Arkansas federal and state courts have consistently cited and followed the jurisdictional principles applied in *Bristol-Myers Squibb* to retain jurisdiction over those defendants where the cause of action was connected to Arkansas but to dismiss non-Arkansas plaintiffs with claims too attenuated from their activities to provide specific personal jurisdiction over the defendant. *See, e.g., West Wind Air LLC v. Thrush Aircraft, Inc.,* 2018 U.S. Dist. LEXIS 132469 (E.D. Ark. 2018); *Lawson v. Simmons Sporting Goods, Inc.*, 553 S.W. 3d 190, 195 (Ark. App. 2018); *Goodwin v. Magness Oil Co.*, 552 S.W. 3d 26, 30-31 (Ark. App. 2018).

While *Bristol-Myers Squibb* was a mass tort action, constitutional due process concepts apply to all actions, including class actions. *See, e.g., McDonnell v. Nature's Way Prods*., LLC, No. 16 C 5011, 2017 WL 4864910, at *4 (N.D. Ill. Oct. 26, 2017) (applying *Bristol-Myers Squibb* to class action claims and declining to exercise specific jurisdiction over non-resident class members); *Wenokur v. AXA Equitable Life Ins. Co*., No. CV-17-00165-PHX-DLR, 2017 WL 4357916, at *4, n.4 (D. Ariz. Oct. 2, 2017) ("The Court also notes that it lacks personal jurisdiction over the claims of putative class members with no connection to Arizona and therefore would not be able to certify a nationwide class"); *In re Dental Supplies Antitrust Litig*., No. 16 Civ. 696, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017) (applying *Bristol-Myers Squibb* to a class action, holding that "[t]he constitutional requirements of due process does not

wax and wane when the complaint is individual or on behalf of a class. Personal jurisdiction in class actions must comport with due process just the same as any other case"). Accordingly, a plaintiff in a class action must establish specific jurisdiction over absent class members before the Court allows the case to proceed.

A federal judge in Illinois recently applied *Bristol-Myers* to dismiss a putative nationwide consumer class action seeking economic damages. *See DeBernardis v. NBTY, Inc*., No. 17 C 6125, 2018 U.S. Dist. LEXIS 7947, at *6 (N.D. Ill. Jan. 18, 2018). In that case, the named plaintiff filed a class action alleging that a distributor of a dietary supplement made false and misleading representations regarding its potential benefits. *Id*. at *1. In addition to a class of Illinois purchasers seeking relief under the Illinois Consumer Fraud Act, the named plaintiff sought to represent a putative nationwide class with respect to consumer fraud, breach of warranty, and unjust enrichment claims. *Id*. at *1-2. Moving to dismiss the complaint in its entirety, the defendant primarily argued Illinois courts lacked personal jurisdiction—based on the *Bristol-Myers* opinion—over the claims of absent class members who did not have any connection to Illinois. *Id*. at *2. The court agreed with the defendant, declaring "that it is more likely than not based on the Supreme Court's comments about federalism that the courts will apply *Bristol-Myers Squibb* to outlaw nationwide class actions in a form, such as in this case, where there is no general jurisdiction over the Defendants." *Id*. at *6.

Like the non-Illinois plaintiffs in *DeBernardis*, the Plaintiff here seeks to represent putative nationwide classes asserting claims against KTUSA for breach of express warranty (Count 1), violations of the Magnuson Moss Warranty Act (Count 3), unjust enrichment (Count 5) and civil conspiracy (Count 10). But the underlying facts, as pled in the Plaintiff's Complaint, fail to draw any connection between KTUSA's activities in Arkansas and the claims of absent

11

class members with no connection to Arkansas.  The non-Arkansas plaintiffs' allegations are thus insufficient to incorporate the necessary "connection between the cause of action and the forum." *Lawson,* 553 S.W. 3d at 195, *citing*, *Bristol-Myers Squibb*, 137 S. Ct. at 1781-83. Their claims should accordingly be dismissed.

Specifically, the following claims by non-Arkansas class members against KTUSA should be dismissed for lack of specific jurisdiction: 1) breach of express warranty (Count 1); 2) violations of the Magnuson Moss Warranty Act (Count 3); 3) unjust enrichment (Count 5); and 4) civil conspiracy (Count 10).

In addition, the separate claims asserted in the Complaint on behalf of absent Louisiana class members under Louisiana law should be dismissed for lack of personal jurisdiction: 1) negligence on behalf of consumers residing in Louisiana (Count 4); 2) violation of the Louisiana Products Liability Act (Count 7); and 3) redhibition (Count 9).

## III.   PLAINTIFF'S NATIONWIDE UNJUST-ENRICHMENT CLAIM FAILS FOR MULTIPLE REASONS

Under Arkansas law, the doctrine of unjust enrichment does not apply where there is a valid, legal and binding contract.  *See Varner v. Peterson Farms,* 371 F.3d 1011, 1018 (8th Cir. 2004).  Claims for unjust enrichment must be dismissed where a plaintiff makes a claim for damages under an express limited warranty.  *See Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1086 (E.D. Ark. 2013).

Here, Plaintiff alleges an express warranty claim in Count 1 and identifies no reason why the express warranty claim cannot proceed.  Compl., Count 1.  The unjust enrichment claim must therefore be dismissed.

Once the Arkansas unjust enrichment claim is dismissed, no representative Plaintiff with standing exists for unjust enrichment claims brought pursuant to other states' laws either.  *See Lewis v. Casey,* 518 U.S. at 357.  Those claims cannot survive.

## IV.   CLAIMS MADE PURSUANT TO LOUISIANA LAW FAIL AS A MATTER OF LAW OR ARE TIME BARRED.

In addition to claims brought pursuant to the Louisiana Products Liability Act (Count 7) and redhibition (Count 9), the Complaint asserts causes of action under Louisiana law for breach of express warranty (Count 1), breach of the Magnuson Moss Warranty Act (Count 3), negligence (Count 4), unjust enrichment (Count 5) and civil conspiracy (Count 10).  Most of the claims are subsumed within the Louisiana Product Liability Act ("LPLA"), La. Rev. Stat. § 9:2800.52, *et seq.* and cannot stand as separate causes of action.  The remaining claims are barred by Louisiana's one-year prescriptive (statute of limitations) provision and should be dismissed.[2]

Louisiana law provides two bases for recovering damages from or to a product: 1) the LPLA; 2) redhibition, La. Civ. Code arts. 2520, 2534 and 2545.  *See Pitre,* 51 F.Supp. 3d at 660.  Generally, personal injury claims and damages caused *by* a product fall under the LPLA.  *See id.* at 900; *Pitre*, 51 F. Supp. 3d at 660; William E. Crawford, *12 Louisiana Civil Law Treatise* § 16:11 (2d ed. 2013).  The LPLA bars recovery for damage caused by a product on any theory not specifically identified in the Act.  *See Pitre*, 51 F. Supp. 3d at 658; La. Rev. Stat. § 9:2800.52.  No recovery for defective products exists in Louisiana under theories of negligence, breach of

---

[2]   While the statute of limitations is typically an affirmative defense pled in an Answer, a claim may be dismissed under Rule 12(b)(6) when it is apparent from the face of the Complaint that the claim is untimely.  *See Varner v. Peterson Farms,* 371 F.3d 1011, 1016 (8th Cir. 2014).

13

warranty, unjust enrichment, or civil conspiracy. *See Pitre*, 51 F.Supp. at 661. Claims brought under those theories cannot survive a motion to dismiss.

Damages *to* a product or resulting economic damages can find a remedy in *either* the LPLA or redhibition, but not both. While the definition of "damage" under the LPLA includes damage to the product itself and economic loss arising from a deficiency in or loss of use of the product, such damages are recoverable only to the extent that redhibition does not allow recovery for such damage. *See Pitre*, 51 F. Supp. 3d at 659-660; *Safeco Ins. Co. of America v. Chrysler Corp.*, 834 So. 2d 1026, 1046 (La. App. 2002); La. Rev. Stat. § 9:2800.53. To the extent damage is compensable in redhibition, it is not compensable under the LPLA. *See id.*

Claims of economic loss by buyers generally fall under redhibition, which equates to warranty theory. *See id.; see also Chevron USA INC v. Aker Mar. Inc.,* 604 F. 3d 888, 899 (5th Cir. 2010) ("Under the redhibition articles, a seller warrants to the buyer that the thing it is selling if free of hidden redhibitory defects and fit for its ordinary use"). A defect is redhibitory when it renders the product useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. *See* La. Civ Code Art. 2520. A defect is also redhibitory when it diminishes the product's usefulness or value so that it must be presumed a buyer who still bought it would do so for a lesser price. *See id.* Claims of overpayment, lack of value, early replacement and other forms of "having to spend money" fall squarely within redhibition. *See Pitre*, 51 F. Supp. 3d at 660-661.

Actions under the LPLA and redhibition, however, are barred unless brought within one year of discovery of the alleged defect. Louisiana's one-year prescriptive (limitations) period for delictual (tort) actions applies to claims governed by the LPLA. *See Hargrove v. Boston Scientific Corp.,* 2014 U.S. Dist. LEXIS 135262 *21-24 (E.D. La. 2014). Redhibition actions are

likewise time-barred unless brought within the one-year prescriptive period.  *See La. Civ Code Art. 2534.*[3]  That period begins to run from the date on which the alleged defect was discovered by the buyer.  *See id.*

Here, the Complaint asserts, among others, claims for negligence, breach of warranty, unjust enrichment, and civil conspiracy.  Those theories are all subsumed within the LPLA and cannot stand as independent causes of action.  The claims asserted under these theories should be dismissed.

The LPLA and redhibition claims are time-barred.  The Complaint asserts that Plaintiff purchased the trailers on July 2015 and observed the alleged premature wear by October 2015; specifically, "that the KLT02e was wearing out way too soon."  Compl. ¶ 31 and 32.  At the time, Plaintiff also made a claim to Fleet Equipment, who in turn notified KTUSA.  Compl. ¶ 33.  Notably, the Complaint also alleges that KTUSA sent a warranty investigator to the Plaintiff's business on April 7, 2016.  Compl. ¶ 38.  At that meeting, the investigator allegedly admitted that the rubber compound was too soft.  Compl. ¶ 38.

KTUSA submits that the prescription (limitations) period for Plaintiff's LPLA and redhibition claims began to run in October 2015.  But even if some ambiguity as to its commencement exists, the KTUSA representative's "admission" in April 2016 leaves no room for doubt that the one-year prescription expired well before the filing of this Complaint.  The claims should be dismissed.

---

[3]     Article 2534 provides for an alternative four-year prescriptive period where the seller did not know of the defect.  Here, however, the Complaint alleges that KTUSA knew of and acknowledged the alleged defect to Plaintiff by October 2016.  Compl. ¶ 38.  The one year prescriptive period therefore applies.

## V.   PLAINTIFF CANNOT RECOVER UNDER THE MAGNUSON MOSS WARRANTY ACT BECAUSE THE KLT02e TIRE IS NOT A CONSUMER PRODUCT AND PLAINTIFF IS NOT A CONSUMER.

The Magnuson Moss Warranty Act, 15 U.S.C.S. § 2301 et seq. ("MMWA"), was adopted to make warranties on consumer products more readily understood and enforceable and to provide the Federal Trade Commission with means of better protecting consumers.  *See Kwiatkowski v. Volvo Trucks N. Am., Inc.*, 500 F. Supp. 2d 875, 876 (N. D. Ill 2007).  It defines a "consumer product" as any personal property which is normally used for personal, family or household purposes.  *See* 15 U.S.C.S. § 2310(1).   It further defines a "consumer" as a buyer of any "consumer product."  *See* 15 U.S.C.S. § 2310(3).

Commercial products used commonly by commercial users do not fall under the protections of the MMWA.  Commercial tractor trailers are not "consumer products," because the normal and ordinary purpose of such trucks is to haul trailers in transport of goods and products over long distances for commercial benefit.  *See Kwiatkowski*, 500 F. Supp. 2d at 877; *Crume v. Ford Motor Co.*, 60 Ore. App. 224, 653 P. 2d 564 (Or. App. 1982) (flatbed trucks); *Walsh v. Ford Motor Credit Co.*, 113 Misc. 2d, 449 N.Y.S. 2d 556 (N.Y. Sup. Ct. 1982).  For the same reasons, tires for those same commercial tractor trailers are not "consumer products."

Here, Plaintiff is a commercial trucking company that purchased commercial trailers equipped with commercial KLT02e tires for use in its commercial operations.  Compl. ¶ 5, 31.  The KLT02e tire was designed for long haul trailers and their semi-trucks.  Compl. ¶ 10.  It was a "dual tire"; that is, a "steerless" low rolling resistance tire that could be placed on a dry van trailer and a "steering" tire that could be placed on the front wheels of a semi-truck.  Compl. ¶ 24.  The gravamen of the Complaint is that the commercial truckers who bought these tires

16

received less than the 140,000 miles that commercial truckers expect from a trucking tire. Compl. ¶ 13 and 26. These are solely commercial products.

While the Complaint claims the KLT02e was a "consumer product" because it was sold by retailers, the bare allegation is unavailing. As the Complaint itself reveals, the "normal and ordinary purpose" of the KLT02e tire was as a straight rolling or steer tire on semi-trucks and their trailers. Just as commercial tractor trailers are not "consumer products," neither are the tires attached to them. The MMWA cannot apply. The claims brought in Count 4 of the Complaint should be dismissed.

## VI.   ARKANSAS' STATUTES OF LIMITATIONS PRECLUDE A RECOVERY ON MANY OF THE ARKANSAS CLAIMS ASSERTED IN THE COMPLAINT.

The following claims are governed by a three-year statute of limitations in Arkansas:

| Count | Nature of Claim | Limitation Provision |
|-------|----------------|---------------------|
| 4 | Negligence | A.C.A. § 16-56-105; *Martin v. Arthur*, 339 Ark. 149 (1999) |
| 5 | Unjust Enrichment | A.C.A. § 16-56-105; *Roach Mfg. Corp. v. Northstar Indus., Inc.*, 630 F. Supp. 2d 1004 (E.D. Ark. 2009) |
| 6 | Arkansas Product Liability Act | A.C.A. § 16-116-203; *Robinson v. Mine Safety Appliances Co.*, 795 F.3d 879, 880 (8th Cir. 2015) |
| 10 | Civil Conspiracy | A.C.A. § 16-56-105; *Varner*, 371 F.3d 1011, 1016 (8th Cir. 2004). |

According to the Complaint, Plaintiff discovered the allegedly premature wear and took steps to make a claim for compensation by October 2015. Compl. ¶¶ 32 and 33. Plaintiff waited to file this action, however, until December 28, 2018. Compl., p. 1. By that

time, the three-year statute of limitations applicable to the Arkansas state law claims listed above had expired.  The claims in Counts 4, 5, 6 and 10 should be dismissed.

## VII.  PLAINTIFF'S COMPLAINT FAILS TO MAKE OUT A COGNIZABLE CLAIM FOR CIVIL CONSPIRACY UNDER ARKANSAS LAW.

Fed. R. Civ. P. 8(a) contains the general pleading rules and requires a Complaint to present a short and plain statement of the claim showing that the pleader is entitled to relief.  *See* Fed. R. Civ. P. 8(a)(2).  In order to meet this standard and survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.  *See Braden v. Wal-Mart Stores, Inc.*, 588 F. 3d 585, 594 (8th Cir. 2009, *quoting*, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  The Complaint here fails to adequately plead the civil conspiracy claim in Count 10.

To prove civil conspiracy, a plaintiff must show that two or more persons have combined to accomplish a purpose that is unlawful or oppressive or to accomplish some otherwise legal purpose by unlawful, oppressive or immoral means, to the injury of another.  *See Allen v. Allison*, 356 Ark. 403, 413 (2004).  A civil conspiracy is not actionable in and of itself, but a recovery may be had for damages caused by acts committed pursuant to the conspiracy.  *See id.* A civil conspiracy is an intentional tort which requires specific intent to accomplish the contemplated wrong.  *See id.*  Alleging that the defendants actually conspired is essential to pleading a conspiracy claim.  *Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988) (holding that stating a conspiracy claim requires allegations showing a "meeting of the minds" among the alleged conspirators); *see also Nance v. Humane Soc'y of Pulaski Cty.*, No. 4:15-CV-00384-BRW, 2015 WL 6638836, *3 (E.D. Ark. Sept. 29, 2015), aff'd, 667 F. App'x. 879 (8th Cir. 2016) (finding that a conspiracy claim failed because the plaintiff had not alleged specific facts with regard to each defendant).  Where a Complaint does not plead facts that, when taken as true,

demonstrate a specific intent to accomplish an unlawful, oppressive or immoral purpose (or a proper purpose by unlawful means), the claim should be dismissed.

Here, Count 10 of the Complaint clearly fails the standard. It contains bare conclusions and accusations with no facts satisfying any of the elements of civil conspiracy. Specifically, it alleges; 1) a "tacit agreement"; 2) to defraud Plaintiffs; and 3) otherwise conceal the dangerous and defective nature of the KLT02e tires. Compl. ¶ 122. No facts appear within Count 10 to establish a basis for these conclusory statements. Without more elsewhere in the Complaint, Count 10 should be dismissed.

The factual allegations contained elsewhere in the Complaint not only fail to fill the void, however, they disprove the existence of a civil conspiracy. No fact asserted in the Complaint indicates that KTUSA and any other defendant combined to do anything. For its part, KTUSA allegedly sent representatives to the Plaintiff who *confirmed* that the rubber compound was too soft. Compl. ¶¶ 36-38. According to the Complaint, KTUSA allegedly sent other representatives to several dealers – and they, too, allegedly agreed that the rubber compound was too soft. Compl. ¶¶ 34, 36 and 37. In other words, the Complaint itself alleges facts showing no tacit agreement or action in concert and no concealment of the alleged defective condition. The alleged facts undercut the existence of a civil conspiracy and disprove the existence of some nefarious purpose. Simply, the *absence* of a combination designed to achieve some improper purpose does not constitute a civil conspiracy.

Nor do any facts supporting the accusation of fraud appear. The Complaint merely states that KTUSA did not give the Plaintiff the remedy it apparently desired. Compl. ¶ 39. Instead, KTUSA provided a different remedy, which the Complaint characterizes as "steering" Plaintiff

to higher quality tires.  Compl. ¶ 39.  Customer dissatisfaction, however, does not equal fraud.
And the allegations that KTUSA did not honor its warranty cannot equate to civil conspiracy.

The pleading further alleges that Hyundai (not KTUSA)[4] provided credits to one or more
dealers, but that the dealers did not pass the credits along to Plaintiff or other commercial
trucking companies.  Compl. ¶ 42 and 43.  The complaint here seems to be that the dealers did
not pass on the credits – an issue Plaintiff presumably can take up with its dealer.  But these
allegations have nothing to do with KTUSA or any civil conspiracy in which KTUSA allegedly
participated.

As the factual allegations fail to satisfy any of the elements of a civil conspiracy cause of
action in Arkansas, the claims in Count 10 made pursuant to Arkansas law should be dismissed.
Once the Arkansas civil conspiracy claim is dismissed, no representative Plaintiff with standing
exists to bring such claims pursuant to other states' laws either.  *See Lewis v. Casey,* 518 U.S. at
357.  Count 10 should be dismissed in its entirety.

## VIII.  THE COMPLAINT FAILS TO ADEQUATELY PLEAD A CLAIM UNDER THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT, A.C.A. § 4-88-101, *et seq.*

Claims made under the Arkansas Deceptive Trade Practices Act, A.C.A. § 4-88-101, *et
seq.* ("ADTPA") must meet the heightened pleading standards of Fed. R. Civ. P. 9(b).  *See Pruitt
v. Sw. Energy Co.*, 2013 U.S. Dist. LEXIS 19301 at *5 (E.D. Ark. Feb. 13, 2013); *Whatley v.
Recontrust Co.,* 2010 U.S. Dist. LEXIS 1251 at *6 (E.D. Ark. Nov. 23, 2010).   The claims
asserted in Count 8 of the Complaint do not meet this standard.

---

[4]     The Complaint makes the conclusory statement that Hyundai's President acted on behalf
of KTUSA in reaching a settlement with Fleet Equipment. Compl. ¶ 42.  Again, no facts
are alleged to support the conclusory allegation.  The allegation on its face makes little
sense as KTUSA allegedly had its own representatives in contact with Plaintiff, Fleet
Equipment and other dealers.

In fact, Count 8 contains no facts.  Compl., Count 8.  It contains conclusions and accusations only.  Included in the bare allegations are accusations that KTUSA acted under false pretense.  Again, the facts actually pled in the Complaint indicate KTUSA personnel *admitted* that the rubber compound was too soft.  *Compare* Compl. ¶ 109 *with* ¶ ¶ 36-38.  Count 8 also claims that KTUSA wanted to "control the market," a concept with absolutely no relation to anything pled in the Complaint.  Compl. ¶ 113.  Count 8 simply meets no pleading standard, much less the necessary standard for pleading claims under the ADTPA.

Further, no facts asserted elsewhere in the Complaint indicate KTUSA knew or had reason to know of any alleged defect at the time of manufacture or prior to sale.  In fact, the Complaint states that KTUSA sent representatives and personnel to Plaintiff, Fleet Equipment and other dealers to investigate the condition of the tires in the field *after* the sale.  Compl. ¶ 36-38.  While Plaintiff clearly did not like the alleged subsequent denial of its warranty claim, such dissatisfaction hardly qualifies as a violation of the ADTPA, even if facts supporting the dissatisfaction were properly pled.  Simply, the failure to plead sufficient facts to establish a possible basis for recovery under the ADTPA requires the claim's dismissal.

Once the ADTPA claim is dismissed, no representative Plaintiff with standing exists to bring such claims pursuant to other states' laws either.  *See Lewis v. Casey,* 518 U.S. at 357.  Count 8 should be dismissed in its entirety.

## <u>CONCLUSION</u>

For the reasons cited herein, Defendant Kumho Tire USA, Inc. respectfully requests that this Honorable Court grant its Motion to Dismiss.

Respectfully submitted,

**Wright, Lindsey & Jennings LLP**

By:   <u>*/s/ Michael D. Barnes*</u>
  Michael D. Barnes (88071)
  Gary D. Marts, Jr. (2004116)
  Michael A. Thompson (2010146)
  200 West Capitol Avenue, Suite 2300
  Little Rock, AR 72201
  T: (501) 371-0808
  F: (501) 376-9442
  E:  mbarnes@wlj.com
   gmarts@wlj.com
   mthompson@wlj.com

**Littleton Park Joyce Ughetta & Kelly LLP**
C. Scott Toomey, Esq. (*Pro Hac Vice*)
201 King of Prussia Rd., Ste. 220
Radnor, PA  19087
T: (484) 254-6220
F: (484) 254-6221

Attorneys for Defendant
Kumho Tire U.S.A., Inc.