IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| HOG WILD TRUCKING, Inc., on behalf of itself and all similarly situated persons and entities, <br><br> Plaintiffs, <br><br> v. <br><br> KUMHO TIRE U.S.A., Inc., a California corporation; HYUNDAI TRANSLEAD, INC., a California corporation; and HYUNDAI de MEXICO, S.A., a foreign corporation <br><br> Defendants. | CASE NO. 3:18-cv-00254-BSM <br><br><br> **CLASS ACTION COMPLAINT FOR BREACH OF EXPRESS WARRANTIES, VIOLATIONS OF MAGNUSON-MOSS ACT (15 U.S.C. §§ 2301-2312), NEGLIGENCE,  AND UNJUST ENRICHMENT** <br><br> **JURY TRIAL DEMANDED PURSUANT TO FED. R.  CIV. PRO. 38(a) & (b)** |

**RESPONSE IN OPPOSITION OF PLAINTIFF HOG WILD TRUCKING, INC. TO THE MOTION TO DISMISS OF DEFENDANT KUMHO TIRE U.S.A., INC.**

Frank L. Watson, III (Tenn. Bar No. 15073)
William F. Burns (Ark. Bar No. 2008019; Tenn. Bar No. 17908)
William E. Routt (Tenn. Bar. No. 28577)
WATSON BURNS, PLLC
253 Adams Avenue
Memphis, Tennessee 38103
Phone: (901) 529-7996
Fax: (901) 529-7998
Email:  fwatson@watsonburns.com
Email:  bburns@watsonburns.com
Email:  wroutt@watsonburns.com

*Counsel for Plaintiff Hog Wild Trucking, LLC, and the absent Class Members*

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

FACTUAL ALLEGATIONS AND BACKGROUND ................................................... 1

LEGAL ARGUMENT ...................................................................................................... 6

    I.  Standard of Review ..................................................................................................6

    II.  Plaintiff has constitutional standing to represent putative class members
        whose claims are governed by the laws of states other than Arkansas.............................7

    III.This Court has specific, personal jurisdiction over Kumho as to the claims
        brought by putative class members with no connection to Arkansas. .............................12

    IV.Plaintiff has sufficiently stated a claim for unjust enrichment. .........................................19

    V.  Plaintiff's claims for negligence, unjust enrichment, violation of the
        Arkansas Product Liability Act, and civil conspiracy are timely. .....................................21

    VI. Plaintiff has sufficiently pled civil conspiracy. ..............................................................22

    VII.Plaintiff has sufficinetly pled a claim under the Arkansas Deceptive Trade
        Practices Act. ....................................................................................................................23

CONCLUSION................................................................................................................ 24

# TABLE OF AUTHORITIES

**Cases**

*AM Trust v. UBS AG*, 78 F. Supp. 3d 977 (N.D. Cal. 2015) ....................................... 17

*Ambriz v. Coca Cola Co.*, No. 13-cv-03539,
    2014 U.S. Dist. LEXIS 9870 (N.D. Cal. Jan. 27, 2014) ........................................... 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 11

*Ballard Group, Inc. v. BP Lubricants USA, Inc.*, 436 S.W.3d 445 (Ark. 2014) ......................... 27

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................... 11

*Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017) .................................... 18, 21

*Chernus v. Logitech, Inc.*, No. 17-673,
    2018 U.S. Dist. LEXIS 70784 (D.N.J. Apr. 27, 2018) ....................................... 17, 18

*DeBernardis v. NBTY, Inc.*, 2018 U.S. Dist. LEXIS 7947 (N.D. Ill. Jan. 18, 2018) ................... 22

*Famular v. Whirlpool Corp.*, No. 16-cv-944,
    2017 U.S. Dist. LEXIS 8265 (S.D.N.Y. Jan. 19, 2017) ......................................... 17

*Haj v. Pfizer Inc.*, 338 F. Supp. 815 (N.D. Ill. Aug. 3, 2018) ................................ 19, 21

*Harrison v. GM Co.*, No. 17-3128-CV,
    2018 U.S. Dist. LEXIS 214041 (W.D. Mo. Dec. 20, 2018) ..................................... 22

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) ..................................................... 11

*Hoyle v. Faucher*, 975 S.W.2d 843 (1998) ............................................................. 24

*Humphrey v. Electrolux Home Products, Inc.*,
    2012 U.S. Dist. LEXIS 111875 (E.D. Ark. Aug. 9, 2012) .................................... 25

*In re Bayer Corp.*, 701 F. Supp. 2d. 356 (E.D.N.Y. 2010) ..................................... 11, 15

*In re Dealer Mgmt. Sys. Antitrust Litig.*, MDL 2817, Case No. 18-cv-864,
    2019 U.S. Dist. LEXIS 12157 (N.D. Ill. Jan. 25, 2019) ........................................ 16

*In re Grand Theft Auto Video Game Consumer Litig.*, No. 06 MD 1739 (SWK) (MHD),
    2006 U.S. Dist. LEXIS 78064 (S.D.N.Y. Oct. 25, 2006) ..................................... 15

*In re Loestrin 24 Fe Antitrust Litig.*, 261 F. Supp. 3d 307 (D.R.I. 2017) ............................... 16

*Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074 (E.D. Ark. 2013) ........................... 25

*Knotts v. Nissan N. Am. Inc.*, 346 F. Supp. 3d 1311 (D. Minn. 2018)...................................passim

*Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88 (2nd Cir. 2018) .....................passim

*Martin v. Arthur*, 339 3 S.W.3d 684 (Ark. 1999) ........................................................ 26

*McDonnell v. Nature's Way Prods., LLC*, 2017 WL 4864910 (N.D. Ill. Oct. 26, 2017) ............. 22

*McEntire v. Malloy*, 707 S.W.2d 773 (1986).............................................................. 26

*Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114 (D.D.C. 2018)..................................... 20

*Morrison v. YTB Int'l, Inc.*, 649 F.3d 533 (7th Cir. 2011)......................................... 14

*Panhandle Oil & Gas, Inc. v. BHP Billiton Petroleum Fayetteville, LLC*,
520 S.W.3d 277 (Ark. App. 2017)............................................................. 24

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .............................................. 19

*Podpeskar v. Makita U.S.A., Inc.*, 247 F. Supp. 3d 1001 (D. Minn. 2017) ................................. 25

*Ramirez v. STi Prepaid, LLC*, 644 F. Supp. 2d. 496 (D.N.J. 2009)............................................. 15

*Sosna v. Iowa*, 419 U.S. 393 (1975) ........................................................................ 14

*Spectro Alloys Corp. v. Fire Brick Engineers Co.*, 52 F. Supp. 3d 918 (D. Minn. 2014) ........... 24

*State v. Diamond Lakes Oil Co.*, 66 S.W.3d 613 (Ark. 2002)...................................... 26

*Suarez v. Cal. Nat. Living, Inc.*, No. 17-cv-9847,
2019 U.S. Dist. LEXIS 34634 (S.D.N.Y. Mar. 5, 2019) ...................................... 23

*Swinter Grp., Inc. v. Serv. of Process Agents, Inc.*, No. 4:17-cv-2759,
2019 U.S. Dist. LEXIS 9079 (E.D. Mo. Jan. 18, 2019)............................................ 22

*United Food & Commer. Workers Unions & Emplors. Midwest Health Bens. Fund v.
Warner Chilcott Ltd.*, 907 F.3d 42 (1st Cir. 2018) ........................................... 13, 14

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................. 12

*Young v. City of St. Charles*, 244 F.3d 623 (8th Cir. 2001)........................................ 11

**Rules**

Rule 12(b) of the Federal Rules of Civil Procedure ......................................................... 5

Rule 7.2 of the Local Rules of the U.S. District Court for the Eastern District of Arkansas ........ 5

Rule 8 of the Federal Rules of Civil Procedure ................................................................. 24, 25

Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure and Rule 7.2 of the Local Rules of the United States District Court for the Eastern District of Arkansas, Plaintiff Hog Wild Trucking, Inc., on behalf of itself and all similarly situated persons and entities ("Plaintiff"), hereby respectfully submits its Response in Opposition (the "Opposition") to the Motion to Dismiss of Defendant Kumho Tire U.S.A., Inc. ("Kumho") (Dkt. Nos. 14, 15) (the "Motion"). In the Motion, Kumho seeks dismissal of the Class Action Complaint (ECF No. 1) (the "Complaint") on a variety of erroneous grounds, including purported lack of standing and personal jurisdiction with respect to certain claims, the preclusion of certain claims by the application of various statutes of limitation, and the purported failure to plead facts as to certain claims that are sufficient to assert cognizable claims against Kumho. These purported grounds do not justify dismissal in this instance, and this Court should, respectfully, deny the Motion.[1] In support of its Opposition to the Motion, Plaintiff states as follows:

<u>FACTUAL ALLEGATIONS AND BACKGROUND</u>

From 2013 through 2016, Kumho manufactured and distributed a tire specifically designed for the installation and use on commercial long haul trailers known as the "KLT02e." (Complaint ¶ 10). Kumho advertised and represented the KLT02e as a "low rolling resistance" tire, which would incur substantially less wear than other long haul tires and, thus, last longer and save money on tires as well as on fuel costs. (Complaint ¶ 10). Kumho issued a six (6) year express warranty that the KLT02e would be free of defect. (Complaint ¶ 11). Kumho marketed the KLT02e to everyday consumers as well as commercial truckers, distributing the tires through Wal-Mart and other consumer retailers. (Complaint ¶ 11).

---

[1] After reviewing the arguments raised by Kumho in its Motion, Plaintiff does not contest Kumho's request that Plaintiff's claims premised upon the Magnuson Moss Warranty Act and Louisiana law be dismissed. As set forth herein, the remainder of Plaintiff's claims are well-pled, and the Motion should be denied as to each remaining claim.

Defendants Hyundai Translead and Hyundai Mexico (hereinafter collectively referred to as "Hyundai") manufacture a variety of van trailers designed to be pulled by a semi truck. (Complaint ¶ 12). Kumho furnished the KLT02e to Hyundai, which Hyundai installed and used in connection with its manufacture of Hyundai's "Dry Van Trailer" series of trailers from 2012 through 2016. (Complaint ¶ 12). Hyundai installed the KLT02e on approximately 40,000 dry vans that it manufactured, with eight (8) tires per dry van. (Complaint ¶ 12). Hyundai Translead issued a five (5) year express warranty that their dry van trailers containing the KLT02e tire would be free from defect. (Complaint ¶ 12).

Despite their express warranties and representations, Kumho and Hyundai discovered that the KLT02e was defective and dangerous. (Complaint ¶ 13). Specifically, as the result of numerous complaints by truckers, these Defendants discovered that the KLT02e had been manufactured from a defective rubber compound which was too soft and not in compliance with federal regulations. (Complaint ¶ 13). As a result of this defect, the KLT02e was subject to rapid wear and erosion that rendered the KLT02e dangerous for road use and required the replacement of the KLT02e well before the end of its otherwise useful life. (Complaint ¶ 13). Typically, low rolling resistance tires will last for approximately 140,000 miles; however, the KLT02e was only lasting truckers approximately 30,000 miles before becoming a dangerous road hazard and requiring replacement. (Complaint ¶ 13).

Following this discovery, Kumho and Hyundai nevertheless determined to ignore the dangerous and defective conditions posed by the KLT02e and even took steps to deny their express warranties and the existence of any problem with the KLT02e, though privately they knew that the KLT02e was defective and dangerous. (Complaint ¶ 14). Instead of warning the public and consumers and offering to replace the tires, Kumho simply ceased the manufacture of

the KLT02e, buried its head in the sand, refused to honor its warranty, and offered to sell different tires to complaining consumer.  (Complaint ¶ 14).

Consumer complaints over the KLT02e were also well known to Hyundai.  (Complaint ¶ 15). In fact, when a large Mid-South trailer dealer threatened to sue Hyundai Translead in a class action over the KLT02e, Hyundai flew a head official from South Korea to offer this dealer significant purchase discounts on future Hyundai trailer orders if it would agree to not file a class action suit and remain secret about their deal.  (Complaint ¶ 15). Thus, both Kumho and Hyundai took affirmative steps to conceal the defective nature of the KLT02e while avoiding their legal obligations to their consumers.  (Complaint ¶ 15).

Because of their inherent and dangerous defects, the KLT02e are substantially likely to fail before the end of their useful life.  (Complaint ¶ 16).  Further, these tires are subject to failure in a sudden and dangerous manner in that the tread will shear and break without warning while a person is driving a vehicle equipped with the KLT02e.  (Complaint ¶ 16).  The KLT02e tires are, therefore, valueless and have harmed and will continue to harm consumers economically. (Complaint ¶ 16).

In the summer of 2015, Plaintiff leased a number of brand new Hyundai Trailers from Fleet Equipment, LLC, a Mid-South authorized dealer of Hyundai Trailers.  (Complaint ¶ 31). All of these Hyundai Trailers had eight (8) brand new KLT02e tires.  (Complaint ¶ 31). In its lease with Plaintiff, Fleet Services assigned all warranties associated with the leased Hyundai Trailers, including the KLT02e, to Plaintiff.  (Complaint ¶ 31).  Thereafter, Plaintiff noticed that the KLT02e was wearing out too soon.  (Complaint ¶ 32).  After approximately 30,000 miles, Plaintiff's KLT02e tires were virtually bald and showing tread separation as well as casing separation.  (Complaint ¶ 32).  Plaintiff notified Fleet Equipment of the defect in the KLT02e,

3

who in turn notified both KUMHO and Hyundai of Plaintiff's specific claim.  (Complaint ¶ 33).

However, even before hearing from Plaintiff as to its complaints about the KLT02e, Fleet Equipment had voiced to Kumho and Hyundai its concern that the KLT02e was seriously defective based on numerous other trucking firm complaints.  (Complaint ¶ 34).  Indeed, Fleet Equipment had made contact with two other peer Hyundai Trailer dealers – Southeastern Trailer Mart located in Atlanta, Georgia and Bowman Leasing located Baltimore, Maryland – and learned that they too were experiencing a high number of customer complaints that the KLT02e was failing prematurely and was a road hazard.  (Complaint ¶ 34).

As a result, in the summer of 2015, Fleet Equipment, Southeastern Trailer and Bowman Leasing made a joint complaint to Kumho and Hyundai that the KLT02e was defective and needed to be replaced at no cost.  (Complaint ¶ 35).  In response, Kumho sent investigators to Fleet Equipment, Bowman Leasing and Southeastern Trailer to examine the KLT02e tires that they each had on site.  (Complaint ¶ 36).  Specifically, Jim Mayfield, the Executive Vice President of Defendant KUMHO hired Doug Lee, a retired field engineer of Michelin Americas Research & Development Corporation (a tire research company) to inspect the KLT02e tires on-site at Fleet Equipment, Southeastern Trailer and Bowman Leasing.  (Complaint ¶ 36).  When conducting his examination at Fleet Equipment, Mr. Lee informed Fleet Equipment's co-owner, Woody Welch, that KUHMO's compound was defective because the rubber composition was too soft per federal specification.  (Complaint ¶ 36).

Further, Defendant KUMHO sent a representative to Bowman Leasing to inspect its KLT02e tires on site.  (Complaint ¶ 37). At that time, KUMHO's Director of Commercial Business informed Wesley Watkins of Bowman Leasing that KUMHO's compound was defective because the rubber composition was too soft.  (Complaint ¶ 37).  Shortly after he made

4

this admission, Mr. Grant resigned or was let go from KUMHO in April 2016.  (Complaint ¶ 37).

On April 7, 2016, Kumho sent a warranty investigator to Plaintiff's business in Jonesboro, Arkansas in order to inspect Plaintiff's KLT02e tires and assess its warranty claim. (Complaint ¶ 38). After inspecting Plaintiff's KLT02e tires, Kumho's investigator told Plaintiff that KUMHO had used a rubber compound that was too soft for the inner and outer edges of the tires.  (Complaint ¶ 38).  Despite these admissions, Kumho refused to honor its warranty to Plaintiff or any of its consumers.  (Complaint ¶ 39).  Instead, KUMHO simply steered Plaintiff and other consumers to more expensive tires of purportedly better quality.  (Complaint ¶ 39).

After getting the brush off from Kumho, Fleet Services, Bowman Leasing, and other dealers contacted Hyundai and informed them of the massive problem that both Hyundai Trailer dealers and end consumers were facing as a result of the defective KLT02e.  (Complaint ¶ 40). In particular, Fleet Services threatened that if it did not receive some compensation for the tires that it had to replace, it would sue Hyundai and Kumho in a class action complaint on behalf dealers who had suffered a loss due to the KLT02e.  (Complaint ¶ 41).

In June 2016, Hyundai sent its own President, Kenneth Lee, from South Korea, to meet Fleet Equipment and discuss the threatened class action.  (Complaint ¶ 42).  Mr. Lee, on behalf of Kumho, agreed to give Fleet Equipment $327,000 in credit towards new trailer purchases that Fleet Equipment would make in the future if Fleet Equipment did not file a class action. (Complaint ¶ 42).  Fleet Equipment did so, but passed none of that compensation on to Plaintiff or any other end consumers who had suffered damage as the result of purchasing the KLT02e or leasing dry vans originally equipped with new KLT02e tires.  (Complaint ¶ 42).  Hyundai reached similar settlements with other dealers who had complained about the KLT02e but the compensation paid Hyundai never went to compensate the other end consumers who had

suffered damage as the result of purchasing the KLT02e or leasing dry vans originally equipped with new KLT02e tires.  (Complaint ¶ 43).

On the bases of these allegations, and the remaining allegations set forth in the Complaint, Plaintiff asserts this nationwide class action and a statewide class action for select states brought for:  (i) Breach of Express Warranties, (ii) Violations of Magnuson-Moss Act, 15 U.S.C. §§ 2301-2312, (iii) Negligence, (iv) Unjust Enrichment, (v) Violations of the Arkansas and Louisiana Products Liability Acts, (vi) Violations of the Arkansas Deceptive Trade Practices Act, (vii) Redhibition, and (viii) Civil Conspiracy.  (Complaint ¶ 1).  The named Plaintiff and the Class Members seek an award of compensatory damages against Defendants, as well as an award of exemplary damages against Defendants for their intentional and willful concealment of the inherently defective and dangerous condition posed by these tires from the public and the necessity to replace same to protect the health and welfare of state citizens.  (Complaint ¶ 1). Kumho's Motion to Dismiss Plaintiff's claims is without merit.

## LEGAL ARGUMENT

### I.    STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party."  *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).  Under this standard, a complaint should be dismissed only where

it appears that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

II.   **PLAINTIFF HAS CONSTITUTIONAL STANDING TO REPRESENT PUTATIVE CLASS MEMBERS WHOSE CLAIMS ARE GOVERNED BY THE LAWS OF STATES OTHER THAN ARKANSAS.**

It is an "obvious truth that class actions necessarily involve plaintiffs litigating injuries that they themselves would not have standing to litigate."  *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 95 (2nd Cir. 2018) (citing *In re Bayer Corp.*, 701 F. Supp. 2d. 356 (E.D.N.Y. 2010)).  Yet, Kumho asserts that that this action should be dismissed, in part, based upon the opposite, erroneous contention, asserting that "[i]n a class action, the named plaintiff must allege and prove that it personally has standing with respect to each claim being made." (Brief in Support of Defendant Kumho Tire U.S.A., Inc.'s Motion to Dismiss Plaintiff's Complaint (ECF No. 15) (hereinafter, "Kumho Br."), at p. 4).  Relying upon this false premise, Kumho argues that "[w]here a representative plaintiff is lacking for a particular state, all claims based on that state's laws must be dismissed because no named plaintiff has standing to assert them."  (Kumho Br., at p. 5).  Kumho's argument is baseless.

To the contrary, in 2018, the Second Circuit directly rejected Kumho's argument.  In *Langan v. Johnson & Johnson Consumer Cos.*, Johnson & Johnson argued that plaintiff Langan lacked constitutional standing to represent putative class members whose claims are governed by the laws of states other than Connecticut, where Langan was injured.  *Langan*, 897 F.3d at 92. Finding that Langan did have "standing to bring a class action on behalf of unnamed, yet-to-be-identified class members from other states under those states' consumer protection laws," the Second Circuit observed that "[b]ecause there has been considerable disagreement over this question in the district courts, we write to make explicit what we previously assumed…as long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is

proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3)…not a question of 'adjudicatory competence' under Article III." *Id*. at 92-93.

In making this finding, the Second Circuit observed that "[c]lass actions under Rule 23 of the Federal Rules of Civil Procedure are an exception to the general rule that one person cannot litigate injuries on behalf of another." *Id*. at 93 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)). "Although a named class action plaintiff has not actually suffered the injuries suffered by her putative class members (and therefore would not normally have standing to bring those suits), Congress has said that the fact that the parties 'possess the same interest' and 'suffer[ed] the same injury' gives the named plaintiff a sufficient stake in the outcome of her putative class members' cases." *Id*. at 94 (citing *Dukes*, 564 U.S. at 348-49). Recognizing that "it rarely happens that the circumstances surrounding one plaintiff's claim end up being identical to the claims of another putative class member," the Second Circuit found that "some of Rule 23's requirements (*e.g.*, commonality and typicality under 23(a), and predominance under 23(b)) exist to prevent courts from certifying classes that do not share sufficiently similar characteristics." *Id*. "The question in this case is whether there is a standing problem when a plaintiff attempts to sue on behalf of those who may have claims under different states' laws that generally prohibit the same conduct." *Id*. at 95. The Second Circuit found that such a plaintiff has standing. "Since class action plaintiffs are not required to have individual standing to press any of the claims belonging to their unnamed class members, it makes little sense to dismiss the state law claims of unnamed class members for want of standing when there was no requirement that the plaintiffs have individual standing to bring those claims in the first place." *Id*.

Other Circuits directly considering this question have agreed. For instance, in 2018, the

First Circuit followed the Second Circuit in *Langan* in reaching the same conclusion.  In *United Food & Commer. Workers Unions & Emplors. Midwest Health Bens. Fund v. Warner Chilcott Ltd.*, a defendant challenged "the name plaintiffs' standing to bring claims on behalf of class members whose claims arise under the laws of the twenty-two states within which no named plaintiff has either resided or purchased the relevant Warner products during the class period." 907 F.3d 42, 48 (1st Cir. 2018).  Defendant Warner argued that "because no named plaintiff can successfully bring a claim under the laws of any of those twenty-two states, they necessarily lack standing to bring such claims as representatives of persons who might sue successfully in those states." *Id.*  In rejecting this argument, the First Circuit found that "[r]equiring that the claims of the class representative be in all respects identical to those of each class member in order to establish standing would confuse the requirements of Article III and Rule 23…and render superfluous the Rule 23 commonality and predominance requirements because any case that survived such a strict Article III analysis would by definition present only common issues." *Id.* at 49.  "Rather, the pertinent question is:  Are the differences that do exist [here, the application of different states' laws] the type that leave the class representative with an insufficient personal stake in the adjudication of the class members' claims?  Here…we think not." *Id.*

The First Circuit further observed that "[o]ur conclusion is in line with our prior precedent, in which we required only that a plaintiff make a single purchase in order to satisfy standing for a claim brought under multiple state laws," and "accords with the direction from the Supreme Court that, once the named plaintiff establishes injury and membership in the class, the inquiry should shift 'from the elements of justiciability to the ability of the named representative to 'fairly and adequately' protect the interests of the class.'" *Id.* at 51 (citing *Sosna v. Iowa*, 419 U.S. 393, 403 (1975)).

The Seventh Circuit has reached a similar conclusion.  In explaining whether a plaintiff could bring a putative class action on behalf of out-of-state class members, the Seventh Circuit found that "[i]f the Illinois Consumer Fraud Act law does not apply because events were centered outside Illinois, then plaintiffs must rely on some other state's law; this application of choice-of-law principles has nothing to do with *standing*, though it may affect whether a class should be certified – for a class action arising under the consumer-fraud laws of all 50 states may not be manageable, even though an action under one state's law could be."  *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011).  *See also In re Bayer Corp.*, 701 F. Supp. 2d. at 377 ("Whether the named plaintiffs have standing to bring suit under each of the state laws alleged is 'immaterial' because they are not bringing those claims on their own behalf, but are only seeking to represent other, similarly situated consumers in those states."); *Ramirez v. STi Prepaid, LLC*, 644 F. Supp. 2d. 496, 505 (D.N.J. 2009) ("Hence, the fact that named Plaintiffs may not have individual standing to allege violations of consumer protection laws in states other than those in which they purchased Defendants' calling cards is immaterial.  The issue Defendants raise is one of predominance…to be resolved at the class certification stage of the litigation"); *In re Grand Theft Auto Video Game Consumer Litig.*, No. 06 MD 1739 (SWK) (MHD), 2006 U.S. Dist. LEXIS 78064, at *10 (S.D.N.Y. Oct. 25, 2006) (the relevant question "is not whether the Named Plaintiffs have standing to sue Defendants – they most certainly do – but whether their injuries are sufficiently similar to those of the purported Class to justify the prosecution of a nationwide class action…[t]his question is, at least in the first instance, appropriately answered through the class certification process.").

Kumho argues that Plaintiff here lacks standing to assert claims on behalf of absent class members under any state other than Arkansas.  This rationale relied upon by Kumho was

categorically rejected by the First and Second Circuits last year.  Indeed, the Second Circuit found that "[w]e are not convinced by the reasoning of those district courts that have addressed the issue we confront as a standing issue."  *Langan*, 897 F.3d at 96.  Citing as an example *Richards v. Direct Energy Servs., LLC*, the Second Circuit directly rejected a district court's finding that a Connecticut plaintiff lacked standing to sue on behalf of Massachusetts consumers who were injured by the same defendant.  *Id*.  Rather, "[t]his reasoning falters upon its premise: the harm the plaintiff alleged was not a general grievance common to people generally; it was a specific grievance based on the defendant's falsely advertised rates, suffered by specific people (Connecticut and Massachusetts customers of the defendant), under a specific set of circumstances."  *Id*.  "We fail to see how the fact that the defendant's wrongful conduct impacted customers in two states rendered the injuries of the Massachusetts consumers somehow more indefinite than the identical injuries of the Connecticut consumers."  *Id*.  The Second Circuit accordingly concluded that "whether a plaintiff can bring a class action under the state laws of multiple states is a question of predominance under Rule 23(b)(3), not a question of standing under Article III."  *Id*.; *see also In re Dealer Mgmt. Sys. Antitrust Litig.*, MDL 2817, Case No. 18-cv-864, 2019 U.S. Dist. LEXIS 12157, at *81-82 (N.D. Ill. Jan. 25, 2019) (denying motion to dismiss plaintiffs' state-law claims in states where no named plaintiff operates for lack of Article III standing where the trend and weight of recent legal authority has been to defer the issue until class certification); *In re Loestrin 24 Fe Antitrust Litig.*, 261 F. Supp. 3d 307, 359 (D.R.I. 2017) (recognizing trend).

Each of the cases relied upon by Kumho is a district court case employing a rationale similar to that rejected by the Second Circuit in 2018.  Kumho's argument that Plaintiff lacks standing to assert this putative class action under the laws of any state other than Arkansas is

11

without merit and does not provide any basis for this Court to dismiss Plaintiff's claims for relief under Louisiana law or on a nationwide basis.

## III.   THIS COURT HAS SPECIFIC, PERSONAL JURISDICTION OVER KUMHO AS TO THE CLAIMS BROUGHT BY PUTATIVE CLASS MEMBERS WITH NO CONNECTION TO ARKANSAS.

Kumho challenges the exercise of personal jurisdiction over it as to claims brought by putative class members with no connection to Arkansas.[2]  In doing so, Kumho principally relies on the 2017 Supreme Court Opinion in *Bristol-Meyers Squibb Co. v. Superior Court* for the proposition that personal jurisdiction cannot be exercised over claims where there is no connection between the forum and the claims at issue.  Kumho's reliance on *Bristol-Meyers* is misplaced.  In fact, the majority of courts to consider the question have found that *Bristol-Meyers* does not apply to class action lawsuits and that personal jurisdiction for Rule 23 class actions is analyzed in connection with the named plaintiff's claims, not with those of putative class members.  This Court has personal jurisdiction over Kumho as to all of Plaintiff's claims.

Federal courts have long held that personal jurisdiction over defendants in a class action lawsuit is assessed with respect to the named plaintiff's causes of action.  *See, e.g., Chernus v. Logitech, Inc.*, No. 17-673, 2018 U.S. Dist. LEXIS 70784, at *10 (D.N.J. Apr. 27, 2018) ("It must be stressed that, even in the context of a class action, 'it is the named plaintiff's claims that must arise out of or result from the defendant's forum-related activities, not the claims of the unnamed members of the proposed class, who are not party to the litigation absent class certification."); *Famular v. Whirlpool Corp.*, No. 16-cv-944, 2017 U.S. Dist. LEXIS 8265, at *7 (S.D.N.Y. Jan. 19, 2017) ("When deciding a motion to dismiss for lack of personal jurisdiction, the Court must consider defendants' contacts with the forum state at the time of plaintiffs' filing

---

[2] Kumho does not dispute that this Court can exercise specific, personal jurisdiction over it with respect to the claims of named Plaintiff.  (*See* Kumho Br., at pp. 6-12)

of the complaint…When the action is brought as a purported class action, personal jurisdiction over each defendant is assessed with respect to the named plaintiffs' causes of action"); *AM Trust v. UBS AG*, 78 F. Supp. 3d 977, 986 (N.D. Cal. 2015) ("claims of unnamed class members are irrelevant to the question of specific jurisdiction"); *Ambriz v. Coca Cola Co.*, No. 13-cv-03539, 2014 U.S. Dist. LEXIS 9870, at *18 (N.D. Cal. Jan. 27, 2014) ("The Court concludes that a defendant's contacts with the named plaintiff in a class action, without reference to the defendant's contacts with unnamed members of the proposed class, must be sufficient for the Court to exercise personal jurisdiction over the defendant"). Even after *Bristol-Myers*, this rule remains unchanged, as at least one federal court has recognized. *Chernus*, 2018 U.S. Dist. LEXIS 70784, at *10 n.2 ("contrary to Defendant's position, the *Bristol-Myers* Decision did not change this concept").

Kumho's argument to the contrary and reliance on *Bristol-Meyers* is misplaced. *Bristol-Meyers* was a mass action lawsuit[3] filed in California state court by more than 600 plaintiffs, 592 of whom were residents of other states, asserting claims against defendant pharmaceutical company Bristol-Myers Squibb Co. ("BMS") to recover damages allegedly caused by BMS's drug Plavix. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1777-79 (2017). Asserting lack of personal jurisdiction, BMS moved to quash service of summons on the nonresidents' claims. *Id*. at 1778. The California state courts found that they could properly exercise both general and specific jurisdiction over BMS. *Id*. at 1778-79. On review, the

---

[3] As will be explained *infra*, it is a critical distinction that the instant action is a putative class action and *Bristol-Myers* was a mass action. Kumho, presumably inadvertently, refers to *Bristol-Myers* as a class action in several instances in its Memorandum. (*See* Kumho Br., at p. 8) ("In *Bristol-Myers Squib*, the United States Supreme Court dismissed non-forum class members on the grounds that such class members could not gain "piggyback" jurisdiction by jointing their claims with the claims of plaintiffs how hat a connection to the forum state…In [*Bristol-Myers Squibb*], a group of plaintiffs brought a class action…) (emphasis added). The Court should not be misled by these references suggesting that *Bristol-Myers* was a class action case. It was not, as Kumho correctly states later in its Brief. (*See* Kumho Br., at p. 10) ("While *Bristol-Myers Squibb* was a mass tort action…) (emphasis added).

Supreme Court of the United States found that the exercise of specific jurisdiction over BMS as to the nonresidents' claims violated the Due Process Clause of the Fourteenth Amendment because, as is relevant here, there was no "connection between the forum and the specific claims at issue." *Id*. at 1781.[4]  Relying on this ruling, Kumho asks this Court to extend this rationale to putative members of this class action whose claims do not have a connection to Arkansas.  This Court should decline to do so.

*Knotts v. Nissan N. Am. Inc.* is instructive.   In *Knotts*, plaintiff asserted a putative, nationwide class action against defendant Nissan for claims arising out of allegedly defective vehicles.  346 F. Supp. 3d 1311, 1316-18 (D. Minn. 2018).  Defendant moved to strike, or in the alternative dismiss, the nationwide-class definition on the grounds that the district court lacked personal jurisdiction over it "as to the claims of absent members of the putative class who did not purchase their automobiles in Minnesota and whose claims lack a sufficient connection with Minnesota to allow them to be adjudicated in a court of this state." *Id*. at 1319.  The Minnesota district court denied defendants' motion. *Id*. at 1335.

In doing so, the court addressed at length and rejected defendants' argument that *Bristol-Myers* required dismissal of the non-resident class members' claims. *Id*. at 1331-35.[5]  Indeed, the *Knotts* court expressly held "that [*Bristol-Myers*] is inapplicable to unnamed parties in a federal class action suit." *Id*. at 1332.  The Court first recognized that "'[t]he pre-*Bristol-Myers* consensus…was that due process neither precluded nationwide or multistate class actions nor

---

[4] Notably, the majority left "open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Bristol-Myers*, 137 S. Ct. at 1784.  It is questionable, then, whether *Bristol-Myers* applies via the Fifth Amendment to a federal court, even if the Court adopted Kumho's erroneous interpretation.

[5] To date, "[n]o Court of Appeals has engaged the question of whether [*Bristol-Myers*] requires a finding of specific personal jurisdiction with respect to unnamed members of a putative class action suit." *Knotts*, 146 F. Supp. 3d at 1331.

required the absent-class-member-by-absent-class-member jurisdictional inquiry.'" *Id*. (citing *Haj v. Pfizer Inc.*, 338 F. Supp. 815 (N.D. Ill. Aug. 3, 2018)).   "Indeed, the Supreme Court concluded as much three decades ago in *Phillips Petroleum Co. v. Shutts* when it held 'that a forum State may exercise jurisdiction over the claim of an absent class-action plaintiff, even though that plaintiff may not possess the minimum contacts with the forum which would support personal jurisdiction over a defendant." *Id*. (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)).   "This Court does not read [*Bristol-Myers*] as altering this consensus.'" *Id*.

To the contrary, the *Knotts* court observed that "[*Bristol-Myers*] was a mass tort action, not a class action, and there are meaningful differences between the two types of suits that merit different approaches to this jurisdictional question." *Id*. at 1333.   "'[I]n a mass tort action, each plaintiff is a real party in interest to the complaints; by contrast, in a putative class action, 'one or more plaintiffs seek to represent the rest of the similarly situated plaintiffs, and the 'named plaintiffs' are the only plaintiffs named in the complaint.'" *Id*. (citing *Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114, 126 (D.D.C. 2018)).   "This difference is crucial in the context of [*Bristol-Myers*], which framed its specific jurisdiction analysis at the level of the 'suit' and not at the level of the named or unnamed parties." *Id*.   Accordingly, the court found that, in the class action context, there is but one "suit," the action between the named plaintiff and defendant, and, while plaintiff may end up representing other class members, "'this is different than a mass action where independent suits with independent parties in interest are joined for trial.'" *Id*. (citation omitted).   "The only 'suit' in this action therefore does 'arise out of or relate to the defendant's contacts with the forum.'" *Id*. (citing *Bristol-Myers*, 137 S. Ct. at 1780).   The same is true in this instance.   The only suit before this Court is between Plaintiff and Kumho.   This action arises out of or relates to Plaintiff's contacts with Arkansas.   *Bristol-Myers* provides no

15

basis for dismissal of the claims of the putative class members.

Notably, "a class action suit must satisfy due process procedural safeguards that do not exist in mass tort actions." *Id*. "Rule 23's procedural safeguards ensure that the defendant will be 'presented with a unitary, coherent claim to which it need respond only with a unitary, coherent defense.'" *Id*. (citations omitted). "Given these safeguards, due process concerns for the defendant in the class action context are far less compelling than in a mass tort such as [*Bristol-Myers*], where each joined plaintiff may make different claims requiring different responses." *Id*. at 1334. Because Kumho must already come to this forum to litigate Plaintiff's claims and, pending certification, the claims of the Arkansas class, there is little hardship, as a jurisdictional matter, for it to also litigate the nationwide class claims. Therefore, "it promotes efficiency and expediency to litigate all claims at once rather than to separate the nationwide class." *Id*. "[R]equiring the Court to make personal jurisdiction determinations for every named and potential unnamed plaintiff, particularly at the outset of the litigation…would defeat the purpose of the class action mechanism." *Id*. at 1335.

In fact, *Bristol-Myers*, on its face, supports the exercise of jurisdiction over Kumho here. "The conclusion that [*Bristol-Myers*] did not alter prior consensus is also supported by the Supreme Court's own characterization of its holding in [*Bristol-Myers*] as a 'straightforward application…of settled principles of personal jurisdiction.'" *Id*. at 1334 (citing *Bristol-Myers*, 137 S. Ct. at 1783). "Defendant urges a reading of [*Bristol-Myers*] that would result in wholesale change in federal class action jurisprudence, drastically reducing the number of forums in where a nationwide class action could be brought." *Id*. The *Knotts* court rejected this reading of *Bristol-Myers*.[6][7]

---

[6] Indeed, citing the *Haj* court, the *Knotts* agreed with the following observation:

Additional district courts in this Circuit have reached the same conclusion.  For example, following *Knotts*, the Eastern District of Missouri "applie[d] the reasoning of at least one other district court from the Eighth Circuit (and from various other districts), refusing to extend the holding of [*Bristol-Myers*] to the class action context."  *Swinter Grp., Inc. v. Serv. of Process Agents, Inc.*, No. 4:17-cv-2759, 2019 U.S. Dist. LEXIS 9079, at *4 (E.D. Mo. Jan. 18, 2019).  "The Court agrees that a class action fundamentally differs from a mass tort action, particularly based upon the procedural safeguards present in class actions" under Rule 23.  *Id*. at *4-5; *see also Harrison v. GM Co.*, No. 17-3128-CV, 2018 U.S. Dist. LEXIS 214041, at *20-21 (W.D. Mo. Dec. 20, 2018) (declining to apply *Bristol-Myers* to a federal class action and observing that the district court cases that do so are in the minority).

Kumho relies heavily on two cases from the Northern District of Illinois that reach the opposition conclusion.  (*See* Kumho Br., at 10-11, citing *McDonnell v. Nature's Way Prods., LLC*, 2017 WL 4864910 (N.D. Ill. Oct. 26, 2017) and *DeBernardis v. NBTY, Inc.*, 2018 U.S. Dist. LEXIS 7947 (N.D. Ill. Jan. 18, 2018)).  However, as the *Knotts* court recognizes, outside of the Northern District of Illinois "very few courts have extended [*Bristol-Myers*] to unnamed class members."  *Knotts*, 346 F. Supp. 3d at 1331.  The *Knotts* court, a district court in this Circuit, directly rejected the rationale set forth in both *McDonnell* and *DeBernardis*, citing those cases explicitly.  *Id*. at 1331.  Thus, this Court should not consider *McDonnell* or *DeBernardis* to

---

Had the Supreme Court truly sought to bar certification of nationwide or multistate class actions on due process grounds in all but the one or two States where the defendant is subject to general jurisdiction, it implausible that it would have done so obliquely, in a mass action, and with the caveat that it was "leav[ing] open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court" as the Fourteenth Amendment does "on the exercise of specific jurisdiction by a State."  338 F. Supp. 3d at 819.

[7] As Justice Sotomayor recognized in the *Bristol-Myers* dissent, the Supreme Court did "not confront the question of whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there."  *Bristol-Myers*, 137 S. Ct. at 1789 n.4 (Sotomayor, J. in dissent).

be persuasive authority.  No district courts in this Circuit have found that *Bristol-Myers* applies to prevent the exercise of specific jurisdiction over the claims of out-of-state class members.  *See Swinter*, 2019 U.S. Dist. LEXIS 9079, at *4 (defendant "does not cite to any district courts in this circuit that have found [*Bristol-Myers*] applies to class actions").

Likewise, Kumho's argument that "Arkansas federal and state courts have consistently cited and followed the jurisdictional principles applied in *Bristol-Myers Squibb* to retain jurisdiction…to dismiss non-Arkansas plaintiffs" is inapposite.  (Kumho Br., at 10).  None of the cases that Kumho relies upon to support this argument are class actions or putative class actions. These cases are accordingly irrelevant to the jurisdictional question before this Court.

At the very least, the Court should not consider Kumho's personal jurisdiction challenge until the class certification stage.  *See Suarez v. Cal. Nat. Living, Inc.*, No. 17-cv-9847, 2019 U.S. Dist. LEXIS 34634, at *15 (S.D.N.Y. Mar. 5, 2019) ("The Court concludes that personal jurisdiction over plaintiff's out-of-state claims is best assessed at the class certification stage, not the instant motion to dismiss."). "Specific jurisdiction in a class action arises from the <u>named</u> plaintiff's causes of action, and defendant is indisputably subject to the Court's specific jurisdiction as to plaintiff's claims."  *Id*.  "At present, the out-of-state class members are precisely that – <u>potential</u> class members who are not, and may never be, joined in this action." *Id*. (emphasis in original).  "Thus, the Court need not assess personal jurisdiction over plaintiff's putative out-of-state class action claims unless and until the Court decides a class comprising out-of-state class members merits certification."  *Id*.  The same is true here.

Whether at the motion to dismiss or class certification stage, "[o]utside of Illinois, district courts have largely declined to extend [*Bristol-Myers*] to the class action context."  *Knotts*, 346 F. Supp. 3d at 1332.  "Indeed, 'most of the courts that have encountered this issue have found

that *Bristol-Myers* does not apply in the federal class action context.'" *Id*. (citing *Chernus*, 2018 U.S. Dist. LEXIS 70784, at *7).  "District courts in California, Louisiana, Florida, Georgia, Virginia, Texas, the District of Columbia, and even Illinois have concluded that there are valid reasons for limiting *Bristol-Myers* to named parties – particularly due to the material distinctions between mass tort actions and class actions…"  *Id*.  This Court should not find to the contrary. Accordingly, the Court should deny Kumho's Motion to Dismiss for lack of personal jurisdiction over the claims of out-of-state putative class members.

## IV.  **PLAINTIFF HAS SUFFICIENTLY STATED A CLAIM FOR UNJUST ENRICHMENT.**

"Arkansas permits a complaint to state alternative legal theories even if those theories are inconsistent with one another."  *Panhandle Oil & Gas, Inc. v. BHP Billiton Petroleum Fayetteville, LLC*, 520 S.W.3d 277, 285 (Ark. App. 2017) (citing *Hoyle v. Faucher*, 975 S.W.2d 843, 845 (1998)).  "Pleading alternative legal theories does not negate either theory's viability." *Id*.  Arkansas "appellate courts have allowed litigants to proceed under an alternative theory of unjust enrichment when there is a dispute as to a written agreement's applicability or enforceability."  *Id*.; *see also* FED. R. CIV. P. 8(a)(3) ("A pleading that states a claim for relief must contain…a demand for the relief sought, <u>which may include relief in the alternative</u>); FED. R. CIV. P. 8(d)(2) ("*Alternative Statements of a Claim or Defense*. <u>A party may set out two or more statements of a claim or defense alternatively</u> or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.") (emphasis added).  "Although a party may not ultimately recover on both breach of contract and unjust enrichment claims, it may pursue these alternative theories until it is conclusively decided 'that a valid and enforceable contract exists between the parties which governs the specific dispute before the court.'"  *Knotts*, 346 F. Supp. 3d at 1323 (citing

*Spectro Alloys Corp. v. Fire Brick Engineers Co.*, 52 F. Supp. 3d 918, 932 (D. Minn. 2014)).

Here, it has not been conclusively decided that a valid and enforceable contract exists between the parties governing the present dispute. To the contrary, Plaintiff does not even have the benefit of Kumho's Answer or discovery responses. In its Memorandum, Kumho merely indicates that Plaintiff "identifies no reason why the express warranty claim cannot proceed." (Kumho Br., at p. 12). Yet, Kumho does not indicate that the express warranty claim is valid or concede that it is liable to Plaintiff under the express warranty claim. Kumho may well raise defenses to Plaintiff's express warranty claim that are unforeseen by Plaintiff and that this Court may ultimate find to be valid. In that event, Plaintiff would have a valid unjust enrichment claim against Kumho. Thus, at this stage in the litigation, Plaintiff has asserted, as an alternative theory, a viable unjust enrichment claim against Kumho. *See Knotts*, 346 F. Supp. 3d at 1323-24 (denying motion to dismiss unjust enrichment claim that was sufficiently pled in the alternative to express warranty claims); *see also Podpeskar v. Makita U.S.A., Inc.*, 247 F. Supp. 3d 1001, 1012-13 (D. Minn. 2017) (denying motion to dismiss unjust enrichment claim where "it is impossible to know at this stage if Podpeskar has an adequate remedy at law, and thus, his unjust enrichment claim is properly pleaded in the alternative under FED. R. CIV. P. 8(d)(2)").

The case law cited by Kumho does not change this result. *See Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1086 (E.D. Ark. 2013). In *Jarrett*, the court, considering a motion for judgment on the pleadings after defendants answered the complaint, dismissed a plaintiff's unjust enrichment claim as to one defendant where it was undisputed that a valid and binding express warranty contract existed. *Id.* In doing so, the court relied on *Humphrey v. Electrolux Home Products Inc.*, which found a plaintiff's "unjust enrichment claim failed as a matter of law **where the parties agreed she received a warranty** and she sought to recover on it." *Id.* (citing

*Humphrey v. Electrolux Home Products, Inc.*, 2012 U.S. Dist. LEXIS 111875 (E.D. Ark. Aug. 9, 2012)) (emphasis added). The parties' agreement amounted to a conclusive decision that a valid and enforceable contract existed. To date, there is no such agreement in this case. Plaintiff's unjust enrichment claim is sufficiently pled in the alternative to its breach of warranty claims. Kumho's Motion to Dismiss on these grounds should be denied.

**V.      PLAINTIFF'S CLAIMS FOR NEGLIGENCE, UNJUST ENRICHMENT, VIOLATION OF THE ARKANSAS PRODUCT LIABILITY ACT, AND CIVIL CONSPIRACY ARE TIMELY.**

Plaintiff's claims for negligence, unjust enrichment, violation of the Arkansas Product Liability Act, and Civil Conspiracy are not time barred. The Supreme Court of Arkansas recognizes the "discovery rule," whereby a cause of action does not accrue until plaintiff can ascertain the full nature and extent of the injury. *State v. Diamond Lakes Oil Co.*, 66 S.W.3d 613, 624 (Ark. 2002) ("This so-called 'discovery rule' has been previously recognized by this court on many occasions"). "For example, in *Martin v. Arthur*, 339 3 S.W.3d 684 (Ark. 1999), the court stated that when an injury is suffered, no cause of action in tort begins to accrue <u>until the plaintiff knows, or by the exercise of reasonable diligence should have discovered, the cause of the injury</u>.'" *Id.* (emphasis in original). Indeed, "'[a] cause of action will not accrue under the discovery rule until the plaintiff discovers or in the exercise of reasonable diligence should have discovered <u>not only that he as been injured but also that his injury may have been caused by the defendant's conduct</u>.'" *Id.* (citing *McEntire v. Malloy*, 707 S.W.2d 773 (1986)) (emphasis in original). Here, the Complaint unambiguously alleges that Plaintiff did not and could not have discovered the cause of his injury, and that the injury was caused by defendant's conduct, until April 7, 2016, when Kumho's warranty investigator came to Plaintiff's business in Jonesboro, Arkansas, inspected the tires, and informed Plaintiff that Kumho "had used a rubber compound that was too soft for the inner and outer edges of the tires." (Complaint ¶ 38). It is undisputed

21

that the Complaint was filed on December 23, 2018, well within three years of April 7, 2016. The Complaint is accordingly timely with respect to Plaintiff's claims for negligence, unjust enrichment, violation of the Arkansas Product Liability Act, and Civil Conspiracy.

## VI.   PLAINTIFF HAS SUFFICIENTLY PLED CIVIL CONSPIRACY.

"To prove a civil conspiracy, a plaintiff must show that two or more persons have combined to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in itself unlawful, oppressive or immoral, but by unlawful, oppressive or immoral means, to the injury of another." *Ballard Group, Inc. v. BP Lubricants USA, Inc.*, 436 S.W.3d 445, 455 (Ark. 2014). "A civil conspiracy is not actionable in and of itself, but a recovery may be had for damages caused by acts committed pursuant to the conspiracy." *Id*. Here, Kumho argues that Plaintiff has failed to adequately plead facts which, accepted as true, state a claim for relief for civil conspiracy that is plausible on its face. However, in doing so, Kumho ignores the factual allegations in the Complaint that establish Plaintiff's cause of action for civil conspiracy. The Complaint, properly considered, sufficiently states a claim for civil conspiracy.

Specifically, Plaintiff alleges that Defendants Kumho and Hyundai conspired together to prevent their customers and the public at large from discovering the defects that plagued the KLT02e tires and, in doing so, harmed Plaintiff and the putative class in furtherance of the conspiracy by committing the various acts of wrongdoing alleged in the Complaint. As Plaintiff alleges, after discovering that the KLT02e tires were "indeed dangerous and defective" because they "had been manufactured from a defective rubber compound which was too soft and not in compliance with federal regulations," "Defendants Kumho and Hyundai nevertheless determined to ignore the dangerous and defective conditions posed by the KLT02e and even took steps to deny their express warranties and the existence of any problem with the KLT02e, though privately they knew that the KLT02e was defective and dangerous." (Complaint ¶¶ 13-14).

22

"[B]oth Defendants Hyundai and Kumho took affirmative steps to conceal the defective nature of the KLT02e while avoiding their legal obligations to their consumers." (Complaint ¶ 15).

For instance, after certain dealers threatened Kumho and Hyundai with a class action lawsuit for the problems caused by the KLT02e, Hyundai's President, Kenneth Lee, acting on behalf of *both* Hyundai and Kumho, reached a settlement agreement with these dealers, with a material term of the settlement being that the settling dealers remain secret about their deal. (Complaint ¶¶ 15, 40-43). Mr. Lee's actions on behalf of both Kumho and Hyundai clearly demonstrate that a meeting of the minds took place among Defendants to commit the conspiracy alleged in the Complaint. Notably, one of the Kumho representatives who initially admitted to a dealer that the KLT02e were defective due to the rubber composition being too soft either "resigned or was let go" from Kumho shortly thereafter. Though discovery is needed on this issue, his termination may well have been in furtherance of the alleged conspiracy.

As Kumho admits, Plaintiff need only allege sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Plaintiff has done so with respect to civil conspiracy (and each of its other claims). The Motion to Dismiss should be denied.

## VII.   PLAINTIFF HAS SUFFICINETLY PLED A CLAIM UNDER THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT.

Similarly, Plaintiff has adequately pled a claim under the Arkansas Deceptive Trade Practices Act ("ADTPA"). Under Sections 4-88-107 and 108 of the Arkansas Code, it is unlawful for a person to, among other things, use deception, fraud, or false pretense in, or to conceal, suppress, or omit material facts in connection with the sale and advertisement of goods. It is likewise unlawful for a person to knowingly make false representations as to the characteristics of goods or to engage in an unconscionable, false, or deceptive act or practice in business, commerce, or trade. Again, Kumho simply ignores the pleadings in arguing that the

Complaint fails to sufficiently allege a claim under the ADTPA.

In fact, the Complaint expressly alleges sufficient material facts to demonstrate Defendants' violation of the ADTPA.    Indeed, after discovering that the KLT02e was "dangerous and defective," "Defendants Kumho and Hyundai nevertheless determined to ignore the dangerous and defective conditions posed by the KLT02e and even took steps to deny their express warranties and the existence of any problem with the KTL02e, though privately they knew that the KLT02e was dangerous and defective."    (Complaint ¶¶ 13-14).    "[B]oth Defendants Hyundai and Kumho took affirmative steps to conceal the defective nature of the KLT02e while avoiding their legal obligations to their consumers," as was demonstrated by Mr. Lee's agreement with a dealer on behalf of both Kumho and Hyundai to provide the dealer with significant future discounts so long as the dealer keeps their deal and the problems with the KLT02e secret.    (Complaint ¶¶ 15, 40-43).    That certain representatives of Defendants were honest with certain dealers (including one of whom may have been terminated for his honesty) does not insulate Defendants from their widespread scheme to conceal and suppress the defects inherent in the KLT02e tires, despite Kumho's suggestion to the contrary.    Assuming the facts set forth in the Complaint to be true, Plaintiff has adequately pled a claim under the ADTPA.

## **CONCLUSION**

For the foregoing reasons, Plaintiff Hog Wild Trucking, Inc., on behalf of itself and all similarly situated persons and entities, respectfully requests that this Honorable Court deny the Motion to Dismiss of Defendant Kumho Tire U.S.A., Inc.

Respectfully Submitted By:


*s/ William E. Routt*
Frank L. Watson, III (Tenn. Bar No. 15073)
William F. Burns (Ark. Bar No. 2008019; Tenn.
Bar No. 17908)
William E. Routt (Tenn. Bar. No. 28577)
WATSON BURNS, PLLC
253 Adams Avenue
Memphis, Tennessee 38103
Phone: (901) 529-7996
Fax: (901) 529-7998
Email:  fwatson@watsonburns.com
Email:  bburns@watsonburns.com
Email:  wroutt@watsonburns.com

*Counsel for Plaintiff Hog Wild Trucking, LLC, and*
*the absent Class Members*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of March, 2019, a true and correct copy of the foregoing has been filed electronically with the Court's Electronic Case Filing System.  Pursuant to the Court's ECF System, the following parties listed below are filing users who will receive notice of the foregoing document's filing:

C. Scott Toomey
JOYCE UGHETTA & KELLY LLP
201 King of Prussia Road
Suite 220
Radnor, PA 19087
484-254-6220
Fax: 484-254-6221
Email: scott.toomey@littletonpark.com

*Counsel for Defendant Kumho Tire USA, Inc.*

Gary D. Marts, Jr.
Michael D. Barnes
Michael A. Thompson
WRIGHT, LINDSEY & JENNINGS
200 West Capitol Avenue, Suite 2300
Little Rock, AR 72201-3699
501-212-1234
Fax: 501-376-9442
Email: gmarts@wlj.com
Email: mbarnes@wlj.com
Email: mthompson@wlj.com

*Counsel for Defendant Kumho Tire USA, Inc.*

Joseph R. Falasco
QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, AR 72201-3325
501-379-1776
Email: jfalasco@qgtlaw.com

*Counsel for Defendants Hyundai Translead,
Inc. and Hyundai de Mexico, S.A.*

s/ William E. Routt
William E. Routt